## LONG v. CRUTCHFIELD. (No. 7749.)

Court of Civil Appeals of Texas. San Antonio.
April 6, 1927.

Rehearing Granted April 27, 1927.

**1. Husband and wife ⬳152—Separate estate of married woman is not liable, except for necessaries contracted for in advance (Rev. St. 1925, art. 4623).**

Separate estate of married woman is not liable for her debts under Rev. St. 1925, art. 4623, unless such debts were contracted for necessaries furnished her or her children, and were contracted in advance; subsequent promise to pay husband's debts being void.

**2. Husband and wife ⬳113—Statutes subjecting married woman's property to husband's debts must be strictly construed.**

Statutes seeking to subject married woman's property to liability for husband's debts, must be strictly construed, as wife's estate is not bound, except as provided by statute.

**3. Appeal and error ⬳1002—Jury's findings, based on conflicting evidence, may not be disturbed.**

Findings of jury, where based on conflicting evidence, must be accepted on appeal.

**4. Husband and wife ⬳268(2)—Wife's separate estate held not liable for goods furnished husband for benefit of community property, though furnished on husband's statement that wife would make payment (Rev. St. 1925, art. 4623).**

Wife's separate estate was not chargeable with goods and merchandise furnished husband not used for benefit of her separate property, under Rev. St. 1925, art. 4623, notwithstanding goods were furnished on husband's statement that payment would be made by wife.

**5. Appeal and error ⬳1050(1)—Proof of husband's insolvency held not prejudicial error in action against married woman, based on alleged contract to pay husband's indebtedness.**

In action against married woman, based on alleged agreement to pay husband's debt, proof of husband's insolvency and bankruptcy *held* not prejudicial error, where liability was not claimed to be imposed by mere fact of husband's insolvency.

**6. Husband and wife ⬳87(3)—Wife's agreement to pay for goods furnished husband is void, where without consideration.**

Agreement of wife to pay for goods furnished husband is void, where not supported by any consideration to her or agreement for her benefit or that of her separate property, as obligation to support wife rests on husband individually.

**7. Husband and wife ⬳152—Unless married woman's contract is entered into by her express authority, she is not personally bound thereon.**

Married women cannot be bound personally by contracts so as to subject their separate property, except by their express authority.

**8. Husband and wife ⬳62—Wife held not estopped to deny liability for goods delivered husband by husband's statement that she would make payment.**

Wife, on husband's insolvency, *held* not estopped to deny liability for goods furnished husband by fact that husband stated wife would see that account was paid.

#### On Motion for Rehearing.

**9. Appeal and error ⬳1003—Court of Appeals may set aside judgment as against evidence, though evidence is sufficient to submit case to jury.**

Court of Appeals has power to review facts and set aside judgment which is against evidence, though evidence may be sufficient as matter of law to submit case to jury.

Appeal from District Court, Frio County; Covey C. Thomas, Judge.

Suit by S. M. Crutchfield against Maggie Long. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Magus Smith, of Pearsall, and Leonard Brown, of San Antonio, for appellant.

S. T. Dowe, of Pearsall, and J. D. Dodson and U. S. Algee, both of San Antonio, for appellee.

COBBS, J. Appellee sued appellant, a married woman, alone, to recover on a mercantile account made with G. W. Sanders & Bro. Mercantile Company, of Pearsall, Tex., which account had been duly assigned to appellee, who at the time the account was made was a member of the firm, but who is not now a member thereof. It was based upon certain goods, wares, and merchandise, set out in an itemized account, which were alleged to be necessaries for herself and children. It is alleged that appellant specially agreed to pay said account. Her husband was not joined in the suit, being insolvent at that time, and also at the time the account accrued.

Appellant filed and urged, and now urges, many special pleas, exceptions, and answers —all of which were overruled by the court.

The case was tried with a jury upon many special issues submitted, all of which were found in favor of appellee, and judgment thereupon entered in favor of appellee for $1,789.39.

As this is a suit to subject the married woman's separate estate to a judgment on the account, the very first proposition we are confronted with and must decide is as to her liability. Such other questions that arise will not be discussed, for, if we determine there was no sufficient evidence to support the contract, other issues thereby fail to be of any further interest or value in this case.

[1, 2] Article 4623, R. S., provides, among other things, neither "the income, rents and revenues from her [the married woman's]

separate property, shall be subject to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children." In other words, before her separate estate can be made liable, she must have contracted in advance such an obligation, because any subsequent promise to pay the debt of another, even though he be her husband, would involve the statute of frauds, and would not be within the purview of the statute. All legislation seeking to subject a married woman's property to the debt of the husband must be strictly construed, for neither she nor her separate estate can be bound, except in the manner required by the strict letter of the law; for, whether the women concede it or not, man has ever tried to protect her in all her property as well as all other social rights. Even when the debts are a charge, they must be reasonable.

A careful reading of the briefs of both parties and a reading of the statement of facts does not disclose that the wife made any formal promise, agreement, or understanding, in advance, that she would pay the debt or permit her separate estate to be charged for the same.

During the year 1923 and prior thereto Mr. Long was a customer at the store, and had been for many years, but appellee, becoming uneasy about the ability of appellant's husband to pay, and not desiring to continue giving him credit, requested some security. In an attempt to prove an agreement on the part of appellant to be responsible for the debt, the appellee testified, among other things, that Mr. Long had said his wife would see that the debt was paid, but there was no agreement that she would, or that he was authorized to bind her, as her agent, to pay the same.

S. M. Crutchfield, the appellee, testified:

"The first time I ever said anything to Mrs. Long about the account was after it had ended in 1924, and I asked her then to pay this account or sign a note, and she told me she wouldn't. The end of the account was December 31, 1924, and then I spoke to her the first time in regard to her obligating herself to pay this debt, to her personally. I asked her to sign a note for it, and she said she would not. I certainly asked her to pay it, but she did not say she would try to help Newt pay some of his debts; that is not what she said."

He also testified that in January, 1924, Mr. "Long made the statement to me that Mrs. Long would be personally responsible for the account. I never saw Mrs. Long right then, and did not then ask her if she would be personally responsible, but I did continue to run an account to J. N. Long and send statements to J. N. Long, and I talked to J. N. Long about the payment of the account."

He further testified:

"When Mrs. Long came to the store, and I had that conversation with her, she said she wouldn't sign a note, but she didn't say she wouldn't pay this account, but did say she would pay it when she got the money."

Mr. G. W. Sanders, a member of the firm, testified:

"I was present, I believe, in the beginning of 1924, when a conversation was had with Mr. Long about his account. Crutchfield and I had talked about Mr. Long's account there at the store, and decided that one of us would talk to him in regard to it, and Crutchfield came and told me later on that he had seen Long. Long came in the office—I believe it was the latter part of January, 1924—and I asked him the question if Mrs. Long was going to see that the account was paid, and he said she was. I had had a conversation with Crutchfield before I asked Long that question. After that conversation, Long's credit was extended further. As one of the firm, I relied upon that statement. I was given to understand that Mrs. Long had a separate estate of her own. * * *

"Mr. Long had been trading with us for a great many years, ever since I can remember. I expect he has been a customer I know for 20 years anyway. I do not know what amount he owed us in 1923, but it was a pretty good account, December, 1923; don't know approximately how much; he paid several times in 1923. I was worried about the account in 1924, and Long was called in, and I had a conversation with him in the store. At that time he owed several hundred dollars. He had often before that owed us more than that at the end of the year. It was in that conversation that Long said his wife would see that the account was paid. I never had any conversation with Mrs. Long."

The appellee further testified:

"I heard the conversation between Sanders and Long, but I could not repeat Mr. Long's words when he came in. I was right there in about three or four feet of Mr. Sanders, and I stood there during the whole conversation. [Asked if he could give any of the exact language that was used by either party to that conversation, witness said:] I know Sanders asked him if Mrs. Long was going to pay that account; I am positive of that. I can remember some other words of that conversation that Mr. Long said. He said, 'She was' or 'She would.' * * *

"I believed that statement Long made about Mrs. Long paying the account, and run his account for a year on the strength of that. When it came time to pay the account again, I first talked to Mr. Long, then talked about it with Mrs. Long. When I talked to Mrs. Long I told her exactly what we had been relying on, what Mr. Long told us at the time, and she said that was correct."

[3] Appellant and her husband positively and categorically contradicted and denied that any such agreement was made, but the jury found it was made. So, if what is stated constituted an agreement such as would bind her separate estate, we would be compelled to accept the findings, and consider the case further upon the other grounds presented.

[4] We feel safe in holding, however, that no express agreement was made by the married woman, in advance, that would subject her separate estate to the payment of the account, and that is laying out of sight all other questions of law raised in the case, or whether, if an agreement had been made, the articles furnished were necessaries, and their use bound her.

[5] It is not contemplated that the wife's separate estate may be impounded to pay such debts because of the husband's insolvency alone, but must be buttoned upon her express agreement to be bound upon her contract for necessaries for herself and children, if any. So we think no harmful error was committed in proving her husband's insolvency and bankruptcy. Appellee never had any conversation with appellant about binding her estate until the end of the year 1924, after the accrual of the debt, or most of it, at least. Appellee relied on the uncertain, vague, and unsatisfactory statement of the husband, not the statement that his wife authorized him to bind her or that she had agreed to authorize him to bind her, but that in his opinion she would pay the account. They were living together on the community homestead, not upon the wife's separate estate, and the goods and merchandise purchased from appellee were not used in the operation or improvement of her separate property. They were used upon the homestead and community property of both husband and wife, where he was operating a broom industry, employing Mexican labor, and paying them for their services in this industry. His children were all grown, and some were married.

[6] The alleged agreement was not supported by any consideration or agreement for her benefit or that of her separate property, so it was void. Flannery v. Chidgey, 33 Tex. Civ. App. 638, 77 S. W. 1034. The obligation to support his wife rested on Mr. Long, individually, whether he did so or not. Gulley v. Gulley, 111 Tex. 233, 231 S. W. 97, 15 A. L. R. 564. The agreement depended upon to charge her estate did not rest upon an absolute promise to pay her husband's debt, for in law it was primarily his duty, but his effort to charge the wife's estate goes to the extent only if he did not pay it she would, if she could.

If it be conceded that the statements were made in the first instance by the husband, and later admitted by the wife, still it would not show such an express agreement primarily as would bind her separate property. Menard v. Schneider (Tex. Civ. App.) 48 S. W. 761; Snyder-Bell Grocery Co. v. Hamilton (Tex. Civ. App.) 276 S. W. 752. We think the correct rule to bind a woman's separate estate is well presented in the case of Flannery v. Chidgey, supra, in two excellent opinions written for this court by its present Chief Justice, which cover the questions involved here.

[7] It is well settled by authority in this state that married women cannot be bound personally, by contracts, so as to subject their separate property, unless it is done by their express authority conferred upon them by statute. Wadkins v. Watson, 86 Tex. 194, 24 S. W. 385, 22 L. R. A. 779; Kellett v. Trice, 95 Tex. 160, 66 S. W. 51; Poe v. Hall (Tex. Civ. App.) 241 S. W. 708.

Clearly, no contract, express or implied, if such an one could be made by implication, was made prior to the extension of the credit.

[8] Appellee seems to rely upon the very indefinite and uncertain statement of the husband that his wife would see the account paid. He never said she agreed to, or that he was authorized to make such statement for her. There is no place here to apply any equitable doctrine of estoppel or otherwise, in the absence of an agreement made by the wife. No equity arises. It is simply a case of "he who trusts most must lose most."

We cannot see how any good may be accomplished by remanding this case, as the evidence would probably be the same on another trial, so, for the errors shown, it is our opinion, and it is ordered, that the judgment of the trial court be reversed, and judgment be rendered for the appellant.

### On Motion for Rehearing.

Appellee complains that we disregarded the direct testimony of appellee, and quotes therefrom, and underscores the following:

"I told Mrs. Long that Mr. Long had told Mr. Sanders and I in the beginning of the year that she would be personally responsible for the account, and asked if that was a fact, and she said it was. * * * Mr. Long had told me, the early part of that year that Mrs. Long had said that,"

—and then challenges our "holding that the husband, Long, never said that the wife, appellant, agreed to or that he was authorized to make such a statement for her, that she would pay." This quoted testimony we read, as will be seen from our opinion. This conversation is in respect to what the witness said to Mrs. Long and her reply long afterwards. The date is not given. That very consideration was twice referred to by us on pages 3, 4, 5 of our opinion, almost in hæc verba, as claimed in the motion. The motion, although charging we did not discuss all the testimony of appellant, is therefore not correct, and, if not discussed, it is because we found no other.

[9] As was said in Mason v. Peterson (Tex. Com. App.) 250 S. W. 147:

"The Court of Civil Appeals has the power to review the facts and to set aside a judgment where in its opinion the evidence preponderates against it, although the evidence may be sufficient as a matter of law to submit the case to a jury. Where the Court of Civil Appeals has held that the evidence is insufficient as a

matter of law to support the verdict, this holding, though reversed by the Supreme Court, is tantamount to and embraces in effect a finding that the evidence is insufficient as a matter of fact; and such finding by the Court of Civil Appeals is final, and binding upon the Supreme Court."

We do not feel under the circumstance that the case is in such condition as that the judgment should be rendered, the effect of which might be to deprive the parties of the right of a jury trial, even upon the unsatisfactory proof, which may be strengthened upon another trial. The motion is granted.

The judgment will therefore be reversed and the cause remanded for a new trial on all the issues.