## Guy Haynes v. The State.

No. 11856.  Delivered October 3, 1928.

The opinion states the case.

*T. B. Ridgell* of Breckenridge for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for transporting intoxicating liquor, punishment being one year in the penitentiary.

Appellant was a negro.  He was seen by officers to drive his car to a point near a negro shack in the city of Breckenridge.  He took a paste-board box from the car and placed it in an ice box at the rear of the shack and went inside.  The officers did not know what was in the box.  After appellant went in the house they looked in the ice box and found that the carton contained five gallons of whiskey in fruit jars.  After finding the whiskey the officers went to the shack where they overheard a conversation between appellant

and a negro woman called "Boots" in which he told her he had brought five gallons of whiskey and put. it in the ice box. The officers then went in the house, arrested appellant who had gone to bed with "Boots" and took possession of the whiskey.

It was admitted that the officers had no search warrant. Because of its absence objection was interposed to the introduction in evidence of the liquor found, and also to the testimony of the officers about finding it in the ice box. The evidence was admitted on two theories, (a) that a felony was committed in the presence of the officers, which under Art. 212 C. C. P. justified the arrest and search; (b), that the place searched was not appellant's place of residence, and therefore appellant had no ground of complaint even though the search was illegal.

The officers had seen appellant take the carton from his car, and place it in the ice box, but did not know what was in the carton; they later heard him tell "Boots" he had brought five gallons of whiskey and put it in the ice box. But as we understand the evidence they had searched the ice box and discovered the whiskey before hearing such admission from appellant. If this admission had been heard by the officers before they made the search such admission in connection with what they had seen might have authorized an arrest and search under Art. 212, C. C. P., and the following authorities. Agnello v. U. S. 269 Sup. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Moore v. State, 107 Tex. Cr. R. 24, 294 S. W. 550; Pursewell v. State, 107 Tex. Cr. R. 121, 294 S. W. 1107; Hawley v. State, 107 Tex. Cr. R. 243, 296 S. W. 556; Hodge v. State, 107 Tex. Cr. R. 579, 298 S. W. 573; Levine v. State, 4 (2d) S. W. 553; Duda v. State, 6 (2d) S. W. 115; Bevins v. State, 7 (2d) S. W. 532. The admission from appellant came to the officers' knowledge subsequent to a search of the ice box without a warrant authorizing it; such subsequent admission would in no sense legalize a search already illegally conducted, nor render admissible evidence obtained thereby.

If this conviction could be sustained it would be on the theory that the premises searched was not appellant's residence, hence search of it was no invasion of his rights and he could not object to evidence obtained as a result of the search even though it was illegal. Craft v. State, 107 Tex. Cr. R. 130; 295 S. W. 627; Dennis v. State, 2 (2d) S. W. 223; Burnett v. State, 7 (2d) S. W. 548; McFarland v. State, 7 (2d) S. W. 955. Art. 4a C. C. P. reads:

"It shall be unlawful for any * * * peace officer * * * to search the private residence (or) actual place of habitation * * * of any

person without having first obtained a search warrant as required by the law."

And Art. 727a C. C. P. excludes any evidence obtained in violation of the Constitution or laws. Upon the point at issue, viz, whether the place searched was or was not appellant's private residence the evidence is in conflict.

The assistant chief of police testified:

"I next saw him (appellant) when he got out of his car and went into a negro girl's house, we called her 'Boots.' I do not know her name. Boots is all I know."

On cross-examination this witness testified:

"You ask if he (appellant) lived and stayed at that house, and I answer that he was staying there that night and he may have been staying there one or two nights about that time, but I do not believe that he lived there. I do not know whether he paid the rent on the house or not. I know he had gone to bed there that night before we went in and arrested him."

Another officer testified:

"I have known Boots a little better than a year. I got very well acquainted with her in the last year. She had been living in this shack all the time. No one else had been living there with her since I had known her."

On cross-examination this witness said:

"I do not know whether defendant lived at that house nor do I know whether he paid the rent. I knew he had been there once or twice before that time. You ask if he could have been staying there and I not know it, and I answer it looks like we would have run across him once in a while when we went there."

Still another officer testified:

"I do not know how long the defendant Haynes had been living there. We had been watching that place for a week or more and I had seen defendant there before that night. I think twice before."

A witness for the defendant testified:

"I have known Guy (appellant) about five or six years. He lived down on Lindsey Street at Mr. Tracey's quarters and Boots was staying there at that time. He lived there too and had been living there three or four weeks. I have been with him there three or four times. I do not know the date he was arrested, but it was before that time and I have eaten supper there with him. The last time I was there with him was the week he was arrested. Boots was living there at the same time but I do not know how long she had been

living there. You ask why I know it was his home and I answer because he had some clothes there and said it was his home. I do not know who owned the place or who was paying the rent."

It will be seen from the evidence set out that it presented a sharply drawn isue of fact whether the premises searched was appellant's residence. The failure to submit the issue for the jury's determination was complained of in objections to the charge, and also by a special charge which was refused.

For omission to submit such issue the judgment must be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*