## NUESLEIN v. DISTRICT OF COLUMBIA.
### No. 7686.

United States Court of Appeals for the
District of Columbia.

Decided Nov. 25, 1940.

J. Robert Carey, of Washington, D. C., for appellant.

Elwood H. Seal, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Counsel, and John O'Dea, Asst. Corp. Counsel, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice and EDGERTON and VINSON, Associate Justices.

VINSON, Associate Justice.

Appellant was convicted in the Police Court of driving while under the influence of liquor. We allowed an appeal.

At about 1:15 in the morning, two officers in a Scout car received a call to investigate an accident. A taxicab had struck a parked car. In the cab, parked about a block and a half from the scene of the accident, the officers saw the registration card and the character license of the taxi owner. Following this lead, they went to the owner's home, knocked at the door and received no reply. Then without a search or an arrest warrant, they either opened the door or passed through the door already opened, and entered the home. They called out the name revealed by the registration card and character license; there was an answer from upstairs. They went up, knocked on, and spoke through, the bathroom door. The owner of the taxi said that he would be right down. After about fifteen minutes he did come down and stated that he was driving the cab at the time of the accident. The officers acknowledging this statement of fact and believing him to be drunk placed him under arrest. The defendant was convicted of driving an automobile while under the influence of liquor.

The bill of exceptions raises several questions, but we are concerned only with that one which challenges the admissibility of the officers' testimony that the defendant said he was driving the taxicab at the time of the accident. If the admission of this evidence was error, the decision of the lower Court must be reversed.

The legal issue of this case is whether the officers' testimony in respect to the defendant's declaration is admissible in view of "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, * * *".[1] The case: Officers while conducting a general investigation of an accident, enter a private home without a warrant of any kind and without being confronted at the door by the possessor; later, but still in his home, the possessor makes a voluntary declaration of fact to the officers; this fact plus his appearance results in the conclusion by the officers that this man has committed a misdemeanor; they take him into custody.

Counsel did not cite and we are unable to find any case that is completely convincing in respect to the present situation. Similar cases have held the evidence inadmissible;[2] similar cases have held the

---

[1] The Fourth Amendment in its entirety follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] "* * * the alleged confession made by the petitioner after his initial search, whether credible or not, will not serve to make that legal which in its inception was illegal. At best it serves merely to prove that the officers guessed correctly." United States v. Setaro, D.C.Conn., 37 F.2d 134, 137. "* * * * the liquor must be returned to its custodian or owner, from whom it was unlawfully taken * * *, regardless of the admission by the accused, after the execution of the search warrant [admittedly invalid], to the deputy collector that the liquor had, a short time before, been brought to his home by one Ed. Mang, who had rented a room in his house." In re Oryell, D. C.N.Y., 28 F.2d 639, 640. See Haynes v. State, 110 Tex.Cr.R. 553, 9 S.W.2d 1043.

evidence admissible.[3] The general statements in the judicial authorities have covered this case—both ways. The commentators who have collected, analyzed, and criticized the cases bring one, before abandonment, to the verge of the present problem where exists the heaviest crossfire between the legal significance of voluntary declarations, and a completely unlawful entry into a home.[4]

 The crucial thing "found" in this "search" was a declaration of fact by the defendant that has become decidedly incriminating. Yet the derivations of the IVth and Vth Amendments are distinct. Undoubtedly in each provision, the framers had specific abuses of governmental power in mind. Grammatic logic also leads to the result that the IVth and Vth Amendments treat separate problems. The IVth secures one type of privacy; the Vth protects against testimonial compulsion. The constitutional protection afforded by these two Amendments and the rules of evidence travel on different planes: The Amendments are directed toward thwarting oppression by the federal government, and the rules of evidence, for the most part, toward the probabilities of truth. Apart from duress and the like, the illegal acquisition of evidence does not weaken its reliability, and hence at common law the method of obtainment usually had no bearing upon the admissibility.

Under such an analysis it would seem that one should conclude that the defendant's voluntary statement to the officers that he was driving the taxicab at the time of the accident should be admitted. This coupled with his admission at the trial that he had drunk a glass of beer before the accident and the testimony of other witnesses that he was intoxicated at the time he was taken into custody would support the determination that the defendant was guilty of driving while under the influence of liquor. This may well be the truth of the matter. Under this view, whatever relief the defendant is entitled to, because of the infringement of the IVth Amendment, is now irrelevant; other action must be taken to settle the collateral constitutional issue.

 We conclude, nonetheless, that the officers' testimony regarding the defendant's declaration is inadmissible. Although the IVth Amendment was written against the background of the general warrants in England and the writs of assistance in the American colonies, "The right of the people to be secure in their * * * houses * * * shall not be violated, * * *." gives a protection wider than these abuses.[5] While history is re-

---

[3] "But there is no such an essential connection between an illegal search—wherein the illegality consists solely in the want of a valid search warrant—and statements freely and voluntarily made to the officers during the course of that search as to bar such free and voluntary statements. Even though a search is being made, and although it be illegal because of the invalidity of the search warrant, the party whose premises are being searched may remain wholly silent, if he choose so to do. And, on the other hand, any responsible and competent person is at liberty to speak as against himself or against his own interests at any time or place or under any and all circumstances, so long as he freely and voluntarily does so." Quan v. State, 185 Miss. 513, 188 So. 568, 569. That case is stronger for inadmissibility than the instant one in that there was a search warrant, apparently not known to be illegal at the time of the admission; such a warrant would put the defendant off-guard. Compare Milbourn v. State, 212 Ind. 161, 8 N.E.2d 985. The state cases cited are particularly significant in that Mississippi and Indiana have been classi-

fied as holding to the doctrine that illegally obtained evidence is inadmissible. State v. Arregui, 44 Idaho 43, 254 P. 788, 52 A.L.R. 477, 478; Fraenkel, Recent Developments in the Law of Search and Seizure (1928) 13 Minn.L.Rev. 1, 3; Boyer v. United States, 5 Cir., 92 F.2d 857 [Both admission and waiver of search].

[4] VIII Wigmore, Evidence (3d Ed. 1940) §§ 2184, 2186, 2263, 2264; Fraenkel, Concerning Searches and Seizures (1921) 34 Harv.L.Rev. 361; Harno, Evidence Obtained by Illegal Search and Seizure (1925) 19 Ill.L.Rev. 303; Atkinson, Admissibility of Evidence Obtained Through Unreasonable Searches and Seizures (1925) 25 Col.L.Rev. 11.

[5] See the Brandeis and Butler dissenting opinions in Olmstead v. United States, 277 U.S. 438, 471, 485, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376; Ex parte Jackson, 96 U.S. 727, 733, 24 L.Ed. 877. In England, general warrants were used in proceedings for seditious libel. In the colonies, writs of assistance were used to discover smugglers. James Otis resigned as Attorney General of the Colony of Massachusetts in order to attack these

plete with instances of hasty overgeneralizations, thought to be fundamental truths, drawn from the solution of a particular problem, we must regard constitutional provisions as more generic and more organic than other law with which we deal.

The IVth and Vth Amendments relate to different issues, but cases can present facts which make the considerations behind these Amendments overlap.[6] The officers violated the security of the defendant under the IVth by unlawfully coming into his home and by placing him in custody. The defendant's statement to the officers that he was driving the cab now incriminates him, even though it does not fall within the Vth because it does not come under the category of testimonial compulsion, a concept which has broadened as has the "security" of the IVth.

But how did the officers find themselves in position to see and hear the defendant? The officers, in the pursuance of a general investigation, entered the home under no color of right. They did not know that the defendant was driving the car; they did not know that any offense had been committed. If they had gone after a search warrant what would have been the crime charged, what evidence would have been detailed as pertinent? The absence of a search warrant could scarcely make good an entry for which no warrant could have been obtained. Even if a warrant could have been made out, it is still unreasonable to enter a home without one where only a misdemeanor not committed in the presence of officers could have been charged. When the officers entered they were just investigating. They were still

---

writs. Subsequently, Virginia, on June 12, 1776, in her Declaration of Rights stated: "X. That general warrants, whereby any officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted." I Va. Compiled Laws, 1776–1803 (2d Ed. 1814) p. 2. Massachusetts, where the writs of assistance had definite focus, made a broader provision in her Constitution of 1780: "XIV. Every subject has a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: And no warrant ought to be issued but in cases, and with the formalities, prescribed by the laws." Perpetual Laws of Mass., 1780–1789 (1789) p. 11.

The State of North Carolina in its convention called for the purpose of ratifying the Constitution, passed a resolution recommending that the first Congress propose an amendment "That every freeman has a right to be secure from all unreasonable searches and seizures * * *; all warrants, therefore, * * * [general in nature] are dangerous, and ought not to be granted." IV Elliot's Debates on the Federal Constitution (2d

Ed. 1854) 244. See Virginia's recommendation (III Elliot 658) and New York's (I Elliot 328). In the Massachusetts Constitution after the declaration of the right of security comes the language, "All warrants, therefore,". The North Carolina recommendation reads in part, "; all warrants, therefore,". The IVth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and* no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Italics supplied).

The IVth Amendment connects the right of security with the provision against general warrants by "and" rather than by "therefore". This argues against the possible contention that the right of security was declared only for the purpose of condemning general warrants. This choice of words plus the fact that the three state resolutions and the IVth Amendment as written followed the Massachusetts Constitution, which established a right of security, rather than the Virginia Declaration of Rights, which merely condemned general warrants, point to the conclusion that a principle was being developed instead of a particular abuse being remedied.

6 Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Gouled v. United States, 255 U.S. 298, 311, 41 S. Ct. 261, 65 L.Ed. 647; Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Flagg v. United States, 2 Cir., 233 F. 481.

illegally investigating when the defendant told them that he was driving the cab at the time of the accident. The officers looking him over adjudged him to be drunk, and then, and not until then, two and two equaled a drunken driving charge —a charge which can be made without an accident, the only starting point for this investigation.[7] Then the officers took the defendant into custody, again violating his security.[8]

The rights of the defendant under the IVth Amendment have been infringed, and he has not waived those rights. Before a court will hold that a defendant has waived his protection under this Amendment, there must be convincing evidence to that effect.[9] The only evidence in this record that could be said to approach waiver is the voluntary statement by the defendant. But this statement is only a comment in respect to the accident. It has been held that a confession does not make good a search illegal at its inception.[10] This is a part of the broader rule that an illegal search cannot be legalized by what it brings to light.[11] That rule should not be narrowed even though an admission or confession is obtained. Officers should not be encouraged to proceed in an irregular manner on the chance that all will end well. In the instant case it is difficult to find the time when it would have been appropriate for the defendant to resist, acquiesce in, or invite the illegal search. He never had a chance to meet the officers at the door. When later the defendant became aware of his uninvited guests (and we cannot tell when he learned that they were officers), it is requiring too much to say, with the wisdom of hind sight, that he should have insisted upon their departure. His rights had been violated before he confronted the officers. He may never have heard of the IVth Amendment. Undoubtedly, he had even less of an idea as to the method that would insure its continuing protection. He was not a bootlegger or a gambler schooled in resistance to law. He probably had the average layman's respect for the common symbol of the law, officers in uniform. It is for the courts to protect such men's constitutional rights, not for the courts to study the finesse by which persons preserve their protection. On this record we cannot say that the defendant waived the infringement of his IVth Amendment rights.

The problem—does this violation of the IVth Amendment make the evidence inadmissible—remains. At common law evidence is admissible no matter how obtained. But we are living under more than common law. The majority of the state courts have held to the common law rule in spite of constitutional provisions similar to the IVth Amendment.[12] Apparently for a century the same practice was followed unquestioned in the federal courts; since the Boyd[13] case the federal rule has been otherwise. Under the federal rule some illegally obtained evidence is inadmissible, inadmissible because of the IVth Amendment.[14] Critics may assail

---

[7] In Gouled v. United States, 255 U. S. 298, 41 S.Ct. 261, 65 L.Ed. 647, it was stated that a search warrant cannot be used as a means of gaining access to a man's home solely for the purpose of securing evidence. Here we do not even have a warrant, and the visit to the defendant's home could only have been made with the intent of learning about the accident.

[8] Snyder v. United States, 4 Cir., 285 F. 1.

[9] United States v. Kelih, D.C.Ill., 272 F. 484; United States v. Lydecker, D.C.N.Y., 275 F. 976.

[10] United States v. Setaro, D.C.Conn., 37 F.2d 134; In re Oryell, D.C.N.Y., 28 F.2d 639.

[11] Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420.

[12] People v. Defore, 242 N.Y. 13, 150 N.E. 585, 587; State v. Arregui, 44 Idaho 43, 254 P. 788, 52 A.L.R. 477, 478. In the Defore case Cardozo points out that he is dealing with a statute, simple of amendment, and that the legislature has never indicated that the court was following the wrong policy. New York was the only state at that time without a constitutional provision similar to the IVth Amendment. In 1938, New York incorporated the statutory language before the Court in the Defore case as Article I, § 12 of the Constitution.

[13] Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.

[14] Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas.1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Agnello v. United States, 269 U.S. 20,

this rule, but it is well established. The issue for us is not whether the rule should be voided, but whether this situation should be held to come within the rule.

The rights given by the IVth Amendment are something quite distinct from the determination of whether the defendant was driving under the influence of liquor. The two problems must be considered together, however, in effectuating either the protection of the Constitution, or the punishment of the guilty. When two interests conflict, one must prevail. To us the interest of privacy safeguarded by the Amendment is more important than the interest of punishing all those guilty of misdemeanors. Happy would be the result if both interests could be completely protected. If this declaration is admissible and justice meted out on the issue of drunken driving, where is the defendant's remedy for the inexcusable entry into his home? The casuist answers—a civil action against the officers. That remedy has been found wanting.[15] Such remedy scarcely satisfies the non-belligerent, non-legal mind of a person whose security has already been violated and who stands convicted. To follow that procedure means delay, expense, unwanted publicity; it asks the individual to stake too much, and to take too great a chance, in the hope of compensating the interference to his privacy. A criminal remedy is also possible, but it is likely to be too strict or too lax. If criminal actions are brought consistently against the enforcing officers, before long their diligence will be enervated. If no prosecutions are brought, which appears to be the case,[16] it cannot be said that statutory criminal provisions afford any deterrent to the infringement of the IVth Amendment. Even if the criminal and civil remedies worked, the protection would not be complete. The Amendment does not outline the method by which the protection shall be afforded, but some effective method must be administered; the protection granted by constitutional provisions must not be dealt with as abstractions. A simple, effective way to assist in the realization of the security guaranteed by the IVth Amendment, in this type of case, is to dissolve the evidence that the officers obtained after entering and remaining illegally in the defendant's home.[17]

---

46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420. In the Henderson case agents of the federal government gave marked money to two informers and instructed them to purchase cocaine from the defendant. The informers entered defendant's building used both as a store and as a dwelling house. In a short time the informers returned with cocaine and without the money. The officers went to the store, placed the defendant under arrest, and searched the building. They found the money on a dresser in the defendant's bedroom. Was the money admissible in evidence in light of the IVth Amendment? The general rule in felony cases is that after officers have made an arrest upon probable cause, they may conduct a search incidental to the arrest. The Circuit Court held, however, that the evidence was not admissible, stating that the search was not incidental to the arrest but rather the arrest was incidental to the search. The court found the principle of the IVth Amendment too strong to place this case within the rule of incidental search.

15 Snyder v. United States, 4 Cir., 285 F. 1, 3. We have been able to find among the reported federal cases only one action for damages against an officer for an alleged unreasonable search. Hunt v. Evans, 56 App.D.C. 97, 10 F.2d 892.

There was no recovery since the court held that the search warrant was good on its face and the plaintiff invited the search. The number of cases in which the courts have said that there was an unreasonable search and seizure negatives any contention that actions for damages are not brought because the IVth Amendment is never infringed.

16 On November 23, 1921, the following provision became law: "That any officer * * * who shall search any private dwelling as defined in [Title 27] the National Prohibition Act * * * without a warrant directing such search * * * shall be guilty of a misdemeanor * * *". 42 Stat. 223, 18 U.S.C.A. § 53. While the effect of this provision has been judicially recognized (Poulos v. United States, 6 Cir., 8 F.2d 120, 121, there is not one reported case where an officer has been tried for violation. This provision was repealed on August 27, 1935 (49 Stat. 872), but at the same time there was enacted a similar statute applying to the "enforcement of any law of the. United States". 49 Stat. 877, 18 U.S.C.A. § 53a. Likewise, to date, there is not one reported case of an officer tried for violation of this provision.

17 Chafee, The Progress of the Law, 1919–1922 (1922) 35 Harv.L.Rev. 694–5; Atkinson, Admissibility of Evidence Obtained Through Unreasonable Searches

The federal rule which we are applying to this case has been called an expression of misguided sentimentality, a rule more apropos for a fox hunt than for the catching of brutal criminals. It may be that the courts at times by giving force to the principles in the Bill of Rights have handed scheming, calculating, premeditating felons too many effective instruments in the legal battle before the penitentiary portals. The IVth Amendment, however, was not written for felons alone. It not only includes misdemeanants, but also the great bulk of the population, the innocent. Ordinarily, the individual is entitled to the privacy of his home. But when the individual through his actions becomes a suspect, the sanctity of his home is not quite so inviolable; the public interest in bringing criminals to trial cuts across that sanctity. But even then the Constitution requires an orderly procedure. While the IVth Amendment applies to the innocent, the misdemeanants, and the felons, what is an unreasonable search depends upon the nature and importance of the crime suspected, if any. That is why the rule has grown up that in felony cases officers may enter a suspect's home upon probable cause to arrest him, and then conduct a search incidental to the arrest. This defendant may have driven a taxi while under the influence of an alcoholic beverage; at least for some reason he wrinkled the fender of an unoccupied parked car, but the public interest in this case does not call for the rough and speedy conduct of officers tracking down a felon. At most, the officers could have guessed that the defendant committed some misdemeanor.

Once it is realized that the common law rule, all competent evidence is admissible no matter how secured, is no longer the law when the IVth Amendment is infringed, this case presents one simple basic question: is it more important to effectuate the vital constitutional policy of security in the home from general investigations directed toward the hope that some evidence will turn up, or the policy that all misdemeanants be brought to task. We feel that the policy of making effective in concrete cases "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, * * *" to be the more important.[18]

Reversed.

---

and Seizures (1925) 25 Col.L.Rev. 11. Compare, Knox, Self Incrimination (1925) 74 U. of Pa.L.Rev. 139.

[18] See the opinion of Chief Justice Carroll in Youman v. Commonwealth, 189 Ky. 152, 224 S.W. 860, 866, 13 A.L.R. 1303. Wigmore, arguing in favor of the common law rule, evaluates Carroll's expression as the best that can be said for the viewpoint of inadmissibility. VIII Wigmore, Evidence (3d Ed. 1940) § 2184, p. 36. See Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.