THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JOSÉ RODRÍGUEZ RIVERA, Defendant and Appellant.

Nos. CR-63-257, CR-63-258.    Decided November 25, 1964.

*Fernando Pérez Colón,* attorney designated by the Supreme Court to offer legal assistance to defendant on appeal. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Once more we confront a situation in which we must balance the interests of society and of the individual. The community has a genuine and legitimate interest in prosecuting and punishing the offender who infringes the established social order, but it is also interested in protecting the individual from a prosecution in which his conviction may be obtained by methods and tactics repugnant to the constitutional principles. The selection between the values involved becomes even more difficult when we contemplate the vivid picture of an ascending incidence in the commission of crimes which justifiedly must alarm the civil conscience. However, it is indispensable that the balance should tilt to satisfy more adequately the demands of our democratic system, which is structured on the cardinal rule of the dignity of the human being.

On July 26, 1961 at 12:15 p.m., appellant José Rodríguez Rivera was taken into custody and submitted to an illegal search by a public officer.[1] As a result of the search certain

---

[1] The version of this incident which was believed by the trial judge appears from the testimony of policeman Ángel Luis Medina Velázquez and the taxi driver, Pablo Torres Santiago, whose names appeared as witnesses for the prosecution on the back of the information filed against appellant. Rodríguez Rivera had taken a taxi in Santurce and upon arriving at old San Juan requested the driver to take him to the archway of the Cemetery of the Capital, which the driver refused to do and an argument ensued. When defendant tried to leave the cab, the driver called a policeman who, at that time, was on the corner of Fortaleza and Tanca Streets. In view of the driver's complaint in relation to Rodríguez' refusal

jewelry and other objects were seized in a paper bag which he was carrying. He was taken to police headquarters in San Juan, and at 2:00 a.m. he was transferred to General Headquarters,[2] where a detective took charge of the investigation and the objects seized were delivered to him. From there he was taken to the Investigation Division of the District Court. Judge Rivera Valdivia, in view of the evidence presented for his consideration, found probable cause and ordered the arrest of Rodríguez Rivera for two charges of burglary in the first degree. In his remarks he stated in his own handwriting that "Defendant states under oath that he accepts each and every one of the facts presented to the consideration of this court, alleging that he alone, without any companions, committed 2 burglaries. . . ."

On the same day, the 26th, the time not being indicated, appellant offered testimony before Prosecuting Attorney Hernán Longoria, in which he admits the burglaries committed by him and the theft of the objects seized from him by virtue of the search to which he was subjected.[3] In his confession he made express reference to the jewels: "a chain, a ring, a man's wrist watch . . . some lighters, some bracelets . . . and fancy jewelry. . . ."

On the day set for the hearing of the two burglary charges, after waiving the right to a trial by jury, defend-

---

to pay the taxi fare, the policeman ordered defendant to pay, to which the latter agreed. After the payment was made, the policeman inquired as to the contents of a paper bag which appellant was carrying, and the latter answered that it contained some cigarettes and socks. The policeman proceeded to search the bag and he found jewelry and other objects. Suspecting the legality of its acquisition, he took Rodríguez Rivera into custody.

[2] The detective who accompanied appellant offered a sworn statement in which he states that a shopping bag containing some jewelry and cosmetics was delivered to him. He did not interrogate the alleged defendant on the way to headquarters.

[3] The deponent was warned as to his right not to incriminate himself and he was duly warned that, if he did, his testimony could be used against him.

ant, through his counsel and with his express consent, agreed to submit the cases on the investigation record made by the Prosecuting Attorney, which contained the aforesaid statements and those of the respective prejudiced parties, the latter for the purpose of complying with the requirement of the corpus delicti.[4] Nevertheless, the defense requested defendant's acquittal on the basis that since defendant had been illegally arrested, the whole proceeding was null and void. The trial court ruled adversely to the defendant. In synthesis, although it sustained that defendant had been illegally searched and arrested, it considered that the evidence offered was sufficient to establish the offense and for that purpose it made express reference to defendant's confession which appeared in both records. It applied the ruling laid down in *People* v. *Fournier*, 77 P.R.R. 208, 238 (1954), to the effect that merely because a defendant has been illegally arrested, it does not make by itself a voluntary confession void, and it emphasized that the situation in the federal case law is different because the McNabb[5] rule governs there. After the contention had been disposed of in the aforestated manner, defendant's counsel made the following statements which we copy:

". . . we understand that when there is an illegal arrest, an illegal search, there has been an illegal intervention with defendant, and that subsequently any type of evidence, material or physical, *as well as the statements that defendant may make were illegally* received; and therefore, they cannot be received in evidence; and consequently, defendant's statement or confession, even if freely offered, cannot be taken into consideration to determine this case, and to convict him with the corpus

---

[4] Furthermore, in the testimony of one of the prejudiced parties it was said that: "On June 26, 1961 in the afternoon and in the presence of Judge Rivera Valdivia and myself, a man, who called himself José Rodríguez Rivera, admitted that he alone and unaccompanied had committed burglary in my house and in another house nearby."

[5] *McNabb* v. *United States*, 318 U.S. 332 (1943).

delicti plus the confession. We believe that the court cannot consider defendant's confession and must acquit him."

The only error assigned is the admission in evidence of the confession offered by appellant under the circumstances already described, as well as the refusal to suppress said evidence. Although the assignment is limited on its face to the confession, in the brief presented by the attorney the question is discussed particularly referring to any statement—whether it is called confession or admission—offered by the defendant *after* the illegal arrest and search. We shall consider it so.

We have repeatedly held that evidence obtained as a result of an illegal search or invasion is not admissible in evidence and must be suppressed when timely requested, *People v. Capriles*, 58 P.R.R. 551, 563 (1941); *People v. Decós*, 62 P.R.R. 140, 147 (1943); *People v. Nieves*, 67 P.R.R. 283 (1947); *People v. Soto*, 71 P.R.R. 776 (1950); *cf. People v. Sánchez*, 83 P.R.R. 393 (1961); *People v. Luciano*, 83 P.R.R. 551 (1961); *People v. Vargas*, 80 P.R.R. 285 (1958); *People v. Albizu*, 77 P.R.R. 843 (1955),[6] and since 1952 § 10 of the Bill of Rights of our Constitution expressly provides so. On all such cases where we have applied the rule, which, by the way, prevailed in Puerto Rico long before the Federal Supreme Court made it extensive to the states in *Mapp v. Ohio*, 367 U.S. 643 (1961), the suppressed evidence consisted of tangible objects, as material utilized in the *bolita* game, prohibited weapons, and others. Never before had we had occasion to deal with the question of the admissibility of a confession of the accused following an illegal search in which the "fruits" of the crime charged against him were seized.[7]

---

[6] We have followed the same standard in cases where the search, although legal, is not reasonable. *People v. Sosa Díaz*, 90 P.R.R. 606 (1964).

[7] Although the question actually discussed was the voluntary nature of a confession offered after an arrest, the problem was scrutinized in

For the purpose of properly delimiting the question we must explain that we are not concerned with whether the confession was offered voluntarily in the sense that it was the result of physical or psychological coercion, *People* v. *Martínez*, 86 P.R.R. 390 (1962); *People* v. *Meléndez*, 80 P.R.R. 759 (1958); *People* v. *Fournier*, 77 P.R.R. 208 (1954). For present purposes it is an established fact that appellant was not a victim of violence; that his statements were voluntary and spontaneous. There only remains for decision whether although they were offered within the climate indicated, its admissibility is defeated because they were induce as the result of an illegal search.

Since fifty years ago—*Weeks* v. *United States*, 232 U.S. 383 (1914)—traditionally the guarantee against illegal search had been limited to physical evidence. In January 1963 the Federal Supreme Court stated the following in *Wong Sun* v. *United States*, 371 U.S. 471, 485–486:

"The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in Silverman v. United States, 365 U.S. 505, 5 L.Ed.2d 734, 81 S.Ct. 679, that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.' Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. McGinnis v. United States (CA 1 NH) 227 F.2d 598. Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the

*People* v. *Fournier*, 80 P.R.R. 376 (1958), in which opinion Mr. Justice Saldaña stated at p. 445: "Fournier's confession at San Antón constituted the voluntary confession of a guilty conscience. It was 'voluntary' in the only sense which that term can have when it is applied to a confession given by a person under arrest and suspicion *when he is confronted with proof of guilt· which he can neither deny nor explain.*" (Italics ours.) It is fitting to explain that the evidence with which Fournier was confronted had not been obtained by illegal search.

more common tangible fruits of the unwarranted intrusion. See Nueslein v. District of Columbia, 73 App. D.C. 85, 115 F.2d 690. *Nor do the policies underlying the exclusionary rule invite any logical distinction between physical and verbal evidence.* Either in terms of deterring lawless conduct by federal officers, Rea v. United States, 350 U.S. 214, 100 L.Ed. 233, 76 S.Ct. 292; or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained, Elkins v. United States, 364 U.S. 206, 4 L.Ed.2d 1669, 80 S.Ct. 1437, the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction."

Despite these statements free from all ambiguity in relation to the scope of the exclusionary rule of evidence illegally obtained, in the following paragraph of the opinion the admissibility seems to be mingled with the aspect of its voluntary nature in considering the circumstances in which the statements were produced,[8] thus weakening to a certain extent its precise effect.

■ Any doubt which might exist on the point was dissipated a few months later with the opinion rendered in *Fahy* v. *Connecticut*, 375 U.S. 85, 11 L.Ed.2d 191 (decided

---

[8] "The Government argues that Toy's statements to the officers in his bedroom, although closely consequent upon the invasion which we hold unlawful, were nevertheless admissible because they resulted from 'an intervening independent act of a free will.' This contention, however, takes insufficient account of the circumstances. Six or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." (At p. 486.)

This position, ambivalent to a certain extent, was the object of a well-reasoned criticism in an article published in 31 Geo. Wash. L. Rev. 851 (1963), in which it is pointed out that the paragraph copied above would merely show that the confession was inadmissible since it was obtained by means of psychological coercion.

For other comments on the opinion rendered in *Wong Sun* v. *United States, supra,* in relation to the specific point of the broadening of the exclusionary rule, see notes in 77 Harv. L. Rev. 117 (1963) and 51 Calif. L. Rev. 637 (1963), specifically footnote 9.

December 2, 1963), in which it is held that the confessions and admissions which "were induced by being confronted [defendant] with the illegally seized evidence" are inadmissible. (At p. 175.)

■ The efficacy of this ruling is so obvious—as a logical consequence of the guarantee against illegal searches warranted by our Constitution—that we do not hesitate to adopt it in our jurisdiction. Now then, this does not mean that every confession made subsequent to an illegal search is inadmissible. The defendant is bound to establish—as well as in any other incident on suppression of evidence which has been allegedly illegally obtained—that the same was induced as a result of the illegal search, by the confrontation with its "fruits."[9] Nor does it preclude the People from making use of the evidence if it has knowledge of the facts through an independent source, for as stated in *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 392 (1920), the facts obtained in this manner are not "sacred and inaccessible."

Returning to the specific facts of the present case, the difficulty lies in the fact that it was submitted to the trial court on the record of the office of the Prosecuting Attorney, without presenting evidence on the circumstances under which the confession was obtained. This is conceivable if we consider that at that time our exclusionary rule only covered the tangible objects seized and the case of *Wong Sun* v. *United States, supra,* and *Fahy* v. *Connecticut, supra,* had not been decided yet. The contents of the record to which we have referred in the foregoing recital in this opinion leaves a strong impression in our mind that the possibility that the confession and other admissions made by appellant were produced upon being confronted with the jewels and the other articles seized is not remote. In view of this situa-

---

[9] An interesting problem arises when the evidence obtained as a result of an illegal search incriminates a third person. See *People* v. *Ditson,* 369 P.2d 714 (1962) and a note in 50 Calif. L. Rev. 723 (1962).

450

tion, justice demands that we set aside the convictions and remand the cases for the admission of evidence on this point. It is so decreed.

Mr. Chief Justice Negrón Fernández concurs in the result.