**Milton T. SMITH, Jr., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19055.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 14, 1965.

Decided Nov. 9, 1965.

Mr. David E. Aaronson, Washington, D. C., with whom Messrs. William W. Greenhalgh, William B. Martin, Jefferson D. Kirby, III, Marvin J. Brenner, and Robert S. Hall, Jr., Washington, D. C., (all appointed by this court) were on the brief, for appellant.

Miss Carol Garfiel, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty., at the time the brief was filed, and Messrs. Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and DANAHER and TAMM, Circuit Judges.

DANAHER, Circuit Judge:

This appellant was convicted of narcotics violations. When searched following his arrest on each of two occasions, the first on June 10, 1964 and the next on June 18, 1964, the appellant had substantial quantities of heroin in his possession. He contends here that some 130 capsules containing narcotics seized from him on June 10, 1964 were erroneously received in evidence against him. The District Judge after hearing had denied the appellant's pretrial motion to suppress.[1]

Appellant argues that the search was illegal in that (1) the officers had no search warrant, and (2) alternatively, they had failed to knock at the door and announce their identity and purpose, or to secure permission to enter an establishment where liquor was unlawfully sold.

---

1. Appellant's motion had also sought suppression of narcotics found on his person when Smith was arrested on June 18, 1964. A woman named Hicks had sworn out a warrant charging Smith with robbery. She later telephoned to police asking protection and informing them that Smith was on his way to her apartment. Police were waiting there when Smith appeared. Placed under arrest at the time, Smith was searched, and was found to be carrying narcotics in his left sock. We agree with Judge Edgerton that the evidence so discovered was properly received at trial. We need not discuss the June 18th episode in greater detail, for the appellant had received concurrent sentences on the June 10th and June 18th counts. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1942).

The appellant did not testify. He called the police officers whose testimony before the District Judge showed that a person named Shek maintained his unlawful business operations at 1402 Swann Street, N. W. The house had been "raided very often, and there is a lot of narcotics in and out of this place, and prostitutes hang out there and frequent it, and a lot of bootleg whiskey and games, I guess every type of vice you can imagine goes on in this place, and it is raided very often." Shek had no license [2] authorizing the sale of whiskey. It can readily be assumed that the premises were a natural target for police attention.

So it was that about 8:05 A.M. on June 10, 1964, a plain-clothes police officer of the Gambling and Liquor Squad went to the rear door. Officer Cousin testified [3] that the door was open and that he walked in. Just as might any other customer for whiskey at 8 A.M. but using police funds, he purchased a half pint of whiskey from the bartender, one Walker. He thereupon placed Walker under arrest. A second officer who had kept the transaction under surveillance from the rear door then entered and recovered from Walker the two marked bills which had been used in making the purchase. At these happenings, this appellant tried to run through the room. Officer Cousin stopped him and asked why he was running. Appellant explained that he had heard the word "police" and that he wanted to get out before he could be arrested. The officer asked what he had been doing there, and appellant replied "I came here to buy my whiskey. I come here often to buy whiskey."

The appellant attempted to resume his intended flight but was placed under arrest as a frequenter of an illegal establishment.[4] Appellant placed his right hand behind his back. The officer then saw that appellant was holding a plastic bottle covered with tape. That bottle contained 70 capsules of heroin. The officers having arrested the appellant, further searched him and found in his pocket a second bottle containing 60 capsules.

The appellant by his own statement to the police and by his very presence, especially under the circumstances of this case, was a frequenter of an establishment where intoxicating liquor was being illegally sold. He was guilty of a misdemeanor being committed in the presence of the officers. They were well within their proper duty [5] in placing him under arrest even though they

---

2. D.C.Code § 25-109(a) (1961) makes unlawful the keeping for sale or the sale of alcoholic beverage without first having ing obtained a license.

3. Having been called as a witness by defense counsel, Officer Cousin was interrogated and answered as follows:
   "Q. Now, who let you in the rear door?
   "A. The door was open.
   "Q. The door was open and you walked in?
   "A. That is right."
   In argument here, appointed counsel intimated doubt as to whether or not the witness meant the door was merely unlocked. Yet other testimonial references in the transcript do not support that hypothesis. Trial counsel had not asked a question which might have resolved the tendered distinction. In any event, the inferences to be drawn from the testimony were for the trial judge. We certainly can not say the judge could not fairly and reasonably conclude that the door in fact was open, just as the witness stated.

4. D.C.Code § 22-3302 (1961) provides:
   "The following classes of persons shall be deemed vagrants in the District of Columbia:
   *   *   *   *   *
   "(5) Any person who frequents or loafs *  *  * in or around *  *  * any *  *  * establishment where intoxicating liquor is sold without a license."
   And any person convicted under the provisions of that section shall be punished by a fine of not more than $300 or imprisonment for not more than ninety days, or both. D.C.Code § 22-3304 (1961).

5. Indeed, an officer who neglects to make an arrest for an offense against the laws of the United States committed in his presence shall, himself, be deemed guilty of a misdemeanor. D.C.Code § 4-143 (1961).

had no warrant for the arrest. As an incident to the arrest the search of the appellant was lawful, and the contraband then and there seized was correctly ruled by the District Judge to be admissible in evidence against him.

But, his counsel would have us say, in effect, that the plain-clothes officer should have announced before he entered: "I am a police officer, working under cover. I wish to come into your establishment to ascertain whether or not you are presently engaged in the unlawful sale of liquor. If we find that you are doing so, it will be our purpose to place the bartender under arrest." The requirements of law are not that absurd.

██ However insistently under different circumstances [6] the courts will preserve the constitutional rights even of a Shek, the operator, or of a Walker, the bartender, this appellant had failed to convince [7] the District Judge that there had been a violation of the appellant's rights. Quite the contrary, from the uncontradicted testimony the judge readily could have perceived that here was a common dive [8] open to anyone who sought to purchase whiskey at odd hours. The commercial nature of the transaction suggests that there was more liquor to sell. The judge properly on this record could have determined, and the matter of determination was for the trier, not

for us, that at 8 o'clock in the morning the door was open, and Officer Cousin walked in. The establishment was maintained for the very purpose of making its contraband available to the public. The appellant himself had entered to buy whiskey and often had done so, he stated. Apparently when the officers arrested the bartender, they identified themselves as police. The appellant heard that word "police" and definitely insisted that "I want to get out of here before I get arrested."

It is sufficient for the purposes of this case that we discuss only [9] the June 10th arrest of this appellant. There was no error in the ruling of the District Judge.

Affirmed.

EDGERTON, Senior Circuit Judge (concurring in the result):

I think the police entered the Swann Street house on June 10 unlawfully. It follows that the evidence they got in the house should not have been admitted at appellant's trial.

Apart from all other questions, the entry of Officer Cousins without a warrant was unlawful because he did not first announce his supposed authority and his purpose. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), reversing Shepherd v. United

6. For example, in Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690 (1940), officers at 1:15 in the morning went to the appellant's home, entered it, even went upstairs and spoke through the bathroom door to him. Because the officers were without warrant either to search or to arrest and had no probable cause for either, this court ruled that the District Court should have excluded the appellant's statement that he had been driving a taxicab which had been involved in an accident.

Again, in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), officers at 3:45 in the morning, without warrant either to arrest or search, broke into the appellant's apartment, entered his bedroom and seized certain evidence. The Supreme Court ruled that such an invasion was unlawful and that the evidence should have been excluded.

Such cases and others of like import have no applicability to the circumstances here. Cf. White v. United States, 120 U.S.App.D.C. 319, 346 F.2d 800 (1965).

7. And, of course, the burden was on the appellant to do so. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Wilson v. United States, 218 F.2d 754, 757 (10 Cir. 1955); Lotto v. United States, 157 F.2d 623, 626 (8 Cir. 1946).

8. "A place of low resort. *Chiefly U.S.*" MERRIAM-WEBSTER NEW INTERNATIONAL DICTIONARY (2d ed. 1961). It was no less within this court's ruling in Smith v. United States, 70 App.D.C. 255, 257, 105 F.2d 778, 780 (1939), simply because it was an establishment where intoxicating liquor was being sold without a license. See notes 2 and 4, *supra*.

9. See note 1, *supra*.

States, 100 U.S.App.D.C. 302, 244 F.2d 750 (1956). Whether he "tried the door", as he testified, or the "door was open", as he also testified, is immaterial. In Nueslein v. District of Columbia, 73 App.D.C. 85, 86, 115 F.2d 690, 691 (1940), the police "either opened the door or passed through the door already opened * * *" This court held the entry unlawful. In a more recent case we said: "Even if the search * * * had been made pursuant to a search warrant, the officers would have been required to state their identity and purpose before opening the door. 18 U.S.C. § 3109. * * * We think that a person's right to privacy in his home * * * is governed by something more than the fortuitous circumstance of an unlocked door, and that the word 'break', as used in 18 U.S. C. § 3109, means 'enter without permission.' We think that a 'peaceful' entry which does not violate the provisions of § 3109 must be a permissive one, and not merely one which does not result in a breaking of parts of the house." Keiningham v. United States, 109 U.S.App. D.C. 272, 275–276, 287 F.2d 126, 129–130 (1960).

I cannot regard the entry of Officer Cousins as permissive. The majority appears to treat the carrying on of an unlicensed liquor business as implying an invitation to the public to enter. I disagree. In my opinion, whatever invitation the occupier may have given to some or many persons, either expressly or impliedly, he gave no invitation to the general public. No facts known to Officer Cousins made it reasonable for him to think the public was invited. The house was "a private home. * * * A private residence." Officer Cousins so testified and there was no contrary testimony. As far as appears, the house not only was a private home but looked like one. There was no substantial evidence to the contrary. The officer contradicted his own testimony that the door was "open". Many people often leave doors of their private homes unlocked and sometimes leave them open. Moreover, the police must have known that persons who sell liquor illegally are not often so rash as to invite the general public to enter. They invite only selected and trusted customers and persons these persons introduce. An invitation to all members of a group, even a group that is easy to join, is not an invitation to the public.[1]

The laundry in On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L. Ed. 1270 (1952), the "public valet and shoeshine shop" in Fisher v. United States, 92 U.S.App.D.C. 247, 205 F.2d 702, cert. denied, 346 U.S. 872, 74 S.Ct. 122, 98 L.Ed. 381 (1953), and the "public barber shop" in Smith v. United States, 70 App.D.C. 255, 105 F.2d 778 (1939), all were places where businesses were publicly carried on. Since the public was plainly invited, entry of the police violated no one's privacy.

The illegal entry of Officer Cousins could not be legalized by later events, including his success in buying liquor. "[A]n illegal search cannot be legalized by what it brings to light." Nueslein v. District of Columbia, supra, 73 App. D.C. at 89, 115 F.2d at 694.

Other convictions and sentences of the appellant resulted from entry into another house on June 18. If they are valid, as I think they are, the validity or invalidity of the convictions and sentences that resulted from the June 10 entry into the Swann Street house is not important to the appellant, since the sentences were concurrent. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). But this court's opinion that the June 10 entry was legal affects the law of the District of Columbia.

1. Fraternal Order of Eagles No. 778 v. United States, 57 F.2d 93 (3d Cir. 1932), illustrates this.