MONT GILMORE V. STATE.

No. A-75. Opinion Filed February 1, 1910.

(106 Pac. 801.)

1. **COMMERCE—Interstate Commerce—Shipment of Liquors.** The protection afforded by the Constitution and laws of the United States to shipments into this state of intoxicating liquors, upon the ground that they are interstate shipments of commerce, extends only to persons who are lawfully in possession of the liquor so shipped.

2. **EVIDENCE—Statements of Accused.** When an officer arrests a defendant without warrant, the admissibility in evidence of any voluntary statement made by the defendant is not affected by the legality or illegality of the arrest.

(Syllabus by the Court.)

*Appeal from Pontotoc County Court; Joel Terrell, Judge.*

Mont Gilmore was convicted of illegally conveying liquor in the state, and appeals. Affirmed.

*Cawford & Bolen,* for appellant.—Citing: *High et al. v. State,* 2 Okla. Cr. 161; *Boyd v. U. S.,* 116 U. S. 616; *U. S. v. Wong Quong Wong,* (D. C.) 94 Fed. 832; *Pickett v. State* 99 Ga. 12.

*Fred S. Caldwell,* for the State.—Citing: *State v. 18 Casks of Beer,* 24 Okla. 786, and *Cohen v. State* (Ga.) 65 S. E. 1096.

FURMAN, PRESIDING JUDGE. First. Elmer Pool testified that he and the defendant lived at Allen; that in the early part of September, 1908, the defendant hired him to haul a barrel from Francis to Allen; that he did not know what was in the barrel, and the defendant did not tell him what its contents were, or whom it belonged to. R. E. Duncan testified that he was a deputy sheriff, and that he arrested the defendant, and took from him a barrel of whisky; that the arrest was made about two miles east of Francis, in Pontotoc county. In answer to the question as to how many pints the barrel contained the witness said, "I did not count them—he told me there was 100." There was a card on the barrel, upon which was written, "Ed Johnson, Francis,

Oklahoma." Ed Johnson testified that he had not ordered the whisky, and that he had never authorized the defendant to ship whisky in his name. The witness testified that he had a conversation with the defendant about this matter, after the arrest. He said: "I asked him if he ordered whisky in my name. He said, 'You ordered it.' I said, 'No.' He said I did, and we got miffed, and then walked off." The defendant did not offer any testimony. The defendant's uncontradicted statement was that the whisky had been ordered by Ed Johnson. If this was true, the defendant had no right to take it into his possession without the consent of Johnson, and, his possession being unlawful, he cannot raise the issue that this was an interstate shipment. The United States law as to interstate shipments only protects those who are in lawful possession of the article so shipped. As to this issue the evidence sustains the judgment of the trial court.

Second. The other question raised by the defendant can be best presented by copying from the testimony of the witness R. E. Duncan, as follows:

"Q. Do you remember the occasion of your arresting Mont Gilmore? A. Yes; sir. Q. Out east of Francis? A. Yes, sir. Question by the defendant: Q. Did you have a search warrant? A. No, sir. (Defendant objects to any seizure made without a search warrant.) Examination resumed by the state: Q. Did you know what was in the barrel before you arrested him? A. Yes, sir; only by hearsay, though. Q. Did you examine the record of the freight at the depot? A. No, sir. Q. Was this marked? A. Yes, sir; on the barrel marked 'Ed Johnson.' Q. Was there anything on it to show what it contained? A. No, sir.

"Cross-examination by the defendant: Q. It is just a matter of belief that it was a barrel of whisky, isn't it? A. I had been informed twice that day that Mont Gilmore and Elmore Pool were coming there after a barrel of whisky, and I was informed something like three or four weeks before that the barrel of whisky was there, and was informed that it was a barrel of whisky. (Defendant objects for the reason that the witness had no search warrant, and it is in violation of the fourth and fifth amendments of the Constitution of the United States, and that it is incompetent; objection overruled by the court, to which defendant excepts.)

"Examination by the state: Q. What was it? A. It was a barrel of whisky. Q. How many pints? A. I didn't count them; he told me there was 100. Q. Was that barrel billed to Ed Johnson? A. Ed Johnson, Francis, Oklahoma."

The position of counsel for defendant is that the arrest of the defendant and the seizure of the barrel of whisky, being made without warrant, were in violation of the constitutional rights of the defendant, and that therefore the state could not use the evidence that the barrel contained whisky, because this was only positively discovered after the arrest, and was obtained by illegal means. In support of this contention counsel cite *Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. An examination of this case will show that it does not sustain the contention of counsel for the defendant. This was a proceeding to condemn 35 cases of plate glass, seized by a collector as forfeited to the United States, on account of an attempt to defraud the United States of the lawful duties thereon. The charge was that the goods in question were imported into the United States to the port of New York, subject to the payment of duties, and that the owners or agents of said merchandise, or other person unknown, committed the alleged fraud, which was described in the words of the statute. The plaintiffs in error entered a claim for the goods, and pleaded that they did not become forfeited in manner and form alleged. On the trial of the cause it became important to show the quantity and value of the glass contained in 29 cases previously imported. To do this the district attorney offered in evidence an order made by the district judge, under section 5 of the act of June 22, 1874, c. 391, 18 Stat. 187 (U. S. Comp. St. 1901, p. 2019), directing notice under seal of the court to be given to the claimants, requiring them to produce the invoice of the 29 cases. The claimants, in obedience to the notice, but objecting to its validity and to the constitutionality of the law, produced the invoice; and, when it was offered in evidence by the district attorney, they objected to its reception on the ground that, in a suit for forfeiture, no evidence can be compelled from the claimants themselves, and also that the statute, so far as it com-

pels production of evidence to be used against the claimants, is unconstitutional and void. The evidence being received, and the trial closed, the jury found a verdict for the United States, condemning the 35 cases of glass which were seized, and judgment of forfeiture was given. Upon appeal to the Supreme Court of the United States the judgment was reversed, and that court held:

"A proceeding to forfeit a person's goods for an offense against the laws, though civil in form, and whether *in rem* or *in personam*, is a 'criminal case' within the meaning of that part of the fifth amendment which declares that no person 'shall be compelled, in any case, to be a witness against himself.' The seizure or compulsory production of a man's private papers to be used in evidence against him is equivalent to compelling him to be a witness against himself, and, in a prosecution for a crime, penalty or forfeiture, is equally within the prohibition of the fifth amendment."

So it is seen that there is no analogy either as to the facts or the principles of law involved in the case of *Boyd v. United States* and the case now before us. Boyd's Case simply reaffirms the doctrine that no one shall be compelled to give testimony against himself. The voluntary statements of the defendant were given in evidence against him in this case, but no attempt was made to extort testimony from him against himself, neither was he compelled to furnish testimony against himself.

Counsel next cite *United States v. Wong Quong Wong* (D. C.) 94 Fed. p. 832. This was a case against two Chinamen to secure their deportation from the United States. Certain letters which they had written had been unlawfully seized by the officers, and introduced in evidence against them. The court said:

"* * * Any forcible and compulsory extortion of a man's own testimony, or of his private papers, to be used as evidence to convict him of a crime, or to forfeit his goods, is within the condemnation of that judgment. In this regard the fourth and fifth amendments run almost into each other. * * * And any compulsory discovery, by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or of forfeit of his property, is contrary to the principles of free government. It is abhorrent to the instincts of an Englishman. It is abhorrent to the instincts of an American. It may

suit the purposes of despotic power; but it cannot abide the pure atmosphere of political liberty and personal freedom.   *   *   *. And we have been unable to perceive that the seizure of a man's private books and papers, to be used in evidence against him, is substantially different from compelling him to be a witness against himself."

This authority simply protects a defendant from any forcible and compulsory extortion, by the officers, of his own evidence to be used for his conviction of a crime.

Counsel next cite *Pickett v. State,* 99 Ga. 12, 25 S. E. 608, 59 Am. St. Rep. p. 226. An examination of this case will show that it discusses the question of the legality of arrests without warrant, but it nowhere touches on the question of the admissibility of evidence. So far as the authorities cited by counsel for the defendant go, they support the position that a defendant cannot be compelled to furnish testimony against himself. In each case cited the facts related to the use as evidence of letters or papers which had been unlawfully obtained from the defendant, and that, too, when no offense had been committed by such defendant by having such papers and letters in their possession. There can be no question but that privilege against self-incrimination exists; it is also true that no general rule can be stated which applies to all cases. There is great diversity and conflict in the authorities touching this matter. In 4 Wigmore on Evidence, p. 3101, we find this language, which we heartily indorse:

"In preserving the privilege, however, we must resolve not to give it more than its due significance. We are to respect it rationally for its merits, not worship it blindly as a fetish. We are not merely to emphasize its benefits, but also to concede its shortcomings and guard against its abuses."

The doctrine of the authorities cited by counsel for the defendant, and hereinbefore quoted, has been strongly assailed, and frequently distinguished and modified. But it is not necessary for this court in this case to harmonize the authorities on this queston, or to lay down rules for the courts of this state, further than to say that the rules to be followed will depend largely upon the facts of each case. In this case the defendant after his arrest vol-

untarily stated that the barrel of whisky contained 100 pints. The admissibility of this statement was in no manner affected by the lawfulness or unlawfulness of the defendant's arrest. The statement was not forced or extorted from him, and therefore the question of privilege against self-incrimination does not arise in this case. The barrel of whisky was seized because the defendant was committing a crime by conveying it from one place in this state to another place in the state, under the circumstances disclosed in the record. Can the burglar, arrested with the tools and fruits of his crime upon his person, object to the introduction of this evidence against him upon the ground that his arrest was irregular? Can a defendant have immunity from being brought before a jury for trial upon the ground that his presence will furnish evidence against him by affording the witnesses for the prosecution an opportunity to identify him as the party who committed the crime? Could such immunity be based upon the illegality of his arrest? Can a defendant charged with murder object to the introduction of evidence that the clothes which he had on when arrested were covered with human blood, and that the shoes which he then wore fit the tracks made by the assassin, or that he had in his possession property taken from the deceased? Would any technical error in the manner of his arrest render such evidence illegal?

Finding no error in the record, the judgment of the lower court is affirmed.

DOYLE and OWEN, JUDGES, concur.