## UNITED STATES v. SETARO.

District Court, D. Connecticut. January 7, 1930.

No. 4057.

John Buckley, U. S. Atty., and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn.

John M. Chapnick, of New Haven, Conn., and William Hanna, of Danbury, Conn., for defendant.

THOMAS, District Judge. This is a motion to suppress evidence and return certain property alleged to have been unlawfully seized. The petitioner is now a defendant in a criminal action pending in this court upon an indictment charging him with unlawful transportation of intoxicating liquor and with the maintenance of a nuisance.

A hearing was had upon the petition, and from the evidence adduced at this hearing certain facts seem clear.

The petitioner had been under observation by prohibition agents from May 29, 1929. He conducts a grocery and confectionery store at 128 Liberty street in Danbury. Towards the rear of the premises on which the store is located, there is a private garage in which the petitioner stores his automobile. On the morning of June 17, 1929, two prohibition agents sat in an automobile at a point from which they could observe the petitioner drive up to his store. They saw him do so, and they saw him put his automobile in the garage, leaving the doors of the garage open. From the garage the petitioner went to his store and opened it and held conversation for a few moments with some persons in front of his store. He then went to the garage and carried from it two cans and placed them in the store building entering through a door of the building on the side toward the garage. Thereupon the agents drove up to the garage doors, and as the petitioner was coming back from the store to the garage, the prohibition officers displayed their badges and announced their status.

At this point the evidence of the government and of the petitioner diverges. The petitioner claims that the officers informed him that he was under arrest; that they proposed to search his garage and store; that he demanded that they exhibit a warrant; and that they had none. The agents testified that after displaying their badges and without threats of any kind and without making an arrest, they asked the petitioner whether or not he had any liquor in his car, whereupon the petitioner replied that he had. Thereupon one of the agents stepped into the garage and looked into the car and observed a five-gallon can which the petitioner said contained alcohol, together with 1½ cases of whisky and gin. In the meantime, the other

agent and the petitioner were standing outside of the garage, and that after Officer Henneberry had made his search of the car he came back and reported that liquors were in the car. That thereupon Officer Coté asked the petitioner whether or not he had liquor in the store, to which question the petitioner replied in the negative. On further questioning the petitioner admitted that he had alcohol in the store and asked the agents whether they wanted it, and upon receiving an answer in the affirmative, he went into the store, followed by one of the officers, who did this merely to keep him under observation. He thereupon picked up two cans of alcohol, took them from the store, walked to the garage, and placed them in the car, during all of which time there was no conversation. The agents further testified that they made no search either of the garage or the store, and that one of the agents thereupon drove the petitioner to the police station in the petitioner's car and that the other agent followed in the government car, and that on the way to the police station the petitioner confessed that he had procured the liquor in New Haven and brought it over the night before.

Under the rule prevailing in the federal courts, if the search and seizure conducted by government agents in behalf of the government were unlawful, then the evidence obtained thereunder must be suppressed upon a proper application therefor and the property seized must be returned. The validity of a domiciliary search and seizure without warrant is dependent upon the lawfulness of the arrest to which it is incidental. If the arrest is lawful, then the incidental search and seizure of the premises in which the arrest took place are lawful. In turn, the lawfulness of an arrest without warrant depends upon well-established principles. In the case of a misdemeanor the offense must be committed in the presence of the peace officer. In the case of a felony it must appear that a felony has, in fact, been committed and that the arresting officer had reasonable ground to believe that the arrested person committed the felony.

But the important element, in any event, is this: The search and seizure must be incidental to an arrest, and not be the exploratory basis upon which to predicate a possible arrest.

The government contends that transportation of liquor is now a felony. It is conceded that prior to what is known as the Jones Act (27 USCA §§ 91, 92), both trans-

portation and the maintenance of a nuisance were misdemeanors. A felony under the Federal Criminal Code is an offense punishable by more than a year in prison (18 USCA § 541). All other offenses are misdemeanors. By chapter 473 of the Statutes of 1929, approved March 2, 1929 (45 Stat. 1446, 27 USCA §§ 91, 92), it is provided that certain offenses, including that of transporting intoxicating liquor, may be punished by imprisonment not to exceed five years. If the statute stopped at this point, it would be clear that those offenses are now felonies. But the Jones Act does not stop at this point. It continues with the following: "Provided, That it is the intent of Congress that the court, in imposing sentence hereunder, should discriminate between casual or slight violations and habitual sales of intoxicating liquor, or attempts to commercialize violations of the law." (27 USCA § 91.)

This proviso and its language require attention and consideration. Was Congress legislating when it added this proviso, or was it merely expressing a pious wish? Did Congress intend to restrict the punishment in cases of "casual or slight violations" to penalties meted out to misdemeanants, or did it merely express a hope that the courts would fit the penalty to the crime?

It is to be noted that in the matter of determining the length of a sentence to be imposed upon a conviction for a criminal offense the law has already vested in the courts a large measure of discretion. Penal statutes are customarily so framed that courts are vested with a discretion to impose any sentence up to the maximum. No other instance has been called to my attention where Congress has seen fit to incorporate into its criminal legislation a merely precatory proviso. In no other case has the statute embodied merely a congressional wish or hope that the court, in imposing sentence, would exercise its judgment and fit the punishment to the crime. I think it is to be assumed that Congress understood that the courts would exercise the same discretion in imposing punishment under the National Prohibition Act as they exercise in the case of all other crimes; and if we are to regard the above-quoted proviso as merely advisory, no need existed for it.

I think it may be taken for granted that when Congress passes an act that everything after the enacting clause embodies, or at least is intended to embody, legislation; that everything after the enacting clause carries with it a mandate. A declaration of congressional intent is a pronouncement of the

law. Statutes are not expressions of academic formulæ. They are fiats of the legislative authority or they have no place in the books. If this is so, then the language of this proviso is binding upon the courts, and a court would exceed its power in imposing a five-year sentence on the occasion of a casual or slight violation of the act.

As I have construed the language of this act, it seems to me that upon occasions of "slight or casual violations" the offense is punishable as a misdemeanor.

If I am correct in this conclusion, then it further follows that whether or not an offense under the National Prohibition Act (27 USCA) is a felony or a misdemeanor cannot be determined in advance of the trial. I mean by that, that the indictment itself furnishes no sure basis of classification. The offense, as stated in the indictment, may be punishable by imprisonment up to five years, and, then again, it may not.

As, however, the legality of an arrest without a warrant for an offense not committed within the presence of the arresting officer depends upon the felonious character of the offense, it must follow that unless it affirmatively appears that a felony was committed, the arrest must be deemed unlawful.

I conclude from the undisputed testimony that whatever offense was committed was one not committed in the presence of the arresting officers. This applies to the charge of transportation quite as well as to that of maintaining a nuisance. Unless, therefore, it appears that either of these offenses are felonies, it further follows that the arrest, having been made without a warrant, was unlawful, and if the arrest was unlawful then the search and seizure were equally unlawful.

Assuming, however, that the language of the proviso hereinbefore quoted should be otherwise construed, and assuming furthermore that the offense of transporting intoxicating liquor is now a felony regardless of whether it consisted in the removal, upon a single occasion, of a pint bottle of liquor from one home to another, or the transportation of a smuggled truck load of liquor to be offered for sale by a bootlegger, must a different conclusion be reached as to the validity of the search and seizure in the case at bar? I am of the opinion that in any event, the search in the instant case was unlawful. I find from the testimony that the garage was entered without permission first obtained from the petitioner who used and occupied it, and that the automobile was searched without like permission. This entry

and this search were made before any arrest was made, and not as an incident to the arrest. The garage was not, like a store, a place to which the public was invited and entrance to which, therefore, was not primarily a trespass.

Where a felony has been committed and peace officers have reasonable ground to believe that a certain individual has committed it, they may, without warrant, enter into his home or other place in which he is, for the purpose of effecting an arrest, and, having done so, they may search his person and his immediate surroundings for the implements or fruits of crime. They may not first make a search in order to ascertain whether or not they have grounds for making an arrest. Exploratory searches with or without a warrant contravene ancient prejudices of Anglo-American justice.

In the instant case the officers drove onto the property of the petitioner and up to his garage. I find, as a fact, that one of the officers entered that garage without adequate evidence of probable cause, either of transportation of liquor or the maintenance of a nuisance therein, and I find that the search of the automobile in the garage was likewise made in the absence of probable cause. I find, further, that no arrest had been made at the time.

 I also conclude that the alleged confession made by the petitioner after his initial search, whether credible or not, will not serve to make that legal which in its inception was illegal. At best it serves merely to prove that the officers guessed correctly.

Therefore the petition is granted; the evidence is suppressed and must be returned to the petitioner, and it is so ordered.