## UNITED STATES v. RUFFNER.

No. 14918.

District Court, D. Maryland.

July 17, 1931.

Risley Ensor, Asst. U. S. Atty., of Baltimore, Md., for the United States.

Wendell D. Allen, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case a criminal information has been filed charging the defendant with the unlawful possession of 65 gallons of intoxicating liquor and certain property designed for the manufacture of liquor; that is, in common parlance, a still. The defendant has filed a motion to suppress and exclude certain physical evidence found and seized upon the property of the defendant by prohibition agents (without search warrant or warrant for arrest) on the ground that the search and seizure was in violation of the Fourth Amendment to the Constitution which declares that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In accordance with the practice under such motions, oral testimony of witnesses as to the facts and circumstances surrounding the search and seizure has been taken, and counsel for the respective parties have aided me in the consideration of the matter by the submission of oral and written arguments.

The principal witnesses at the hearing were one Switzer, a brother-in-law and employee of the defendant, and Prohibition Agent Danforth, both called by the defendant. From the evidence it appears that the defendant owns a farm of about 100 acres at or near Grimes Station, Washington county, Md. On the farm is situated a dwelling house and near by, a gristmill with adjoining garage. In consequence of numerous, but anonymous, complaints that the property was being used for the illegal manufacture of whisky, Mr. Danforth and two other prohibition agents visited the place on December 12, 1930, without a search warrant and without a warrant for arrest. As their information was purely anonymous, it is obvious that they could not validly have obtained a search warrant. At the time, the defendant, Peter Ruffner, was not in the building, but was on the farm building a fence. The agents first approached the defendant's wife to ascertain who was in charge of the premises. They were apparently referred by the wife to Switzer who was in the gristmill. Mr. Danforth then had a ten-minute conversation with Switzer who stated that he was in charge of the mill. There is a contradiction between the testimony of these two witnesses as to the substance and effect of the conversation. Switzer stated that in substance Agent Danforth said he was going to make a search and that Switzer said, "All right, go ahead." On the other hand, Agent Danforth testified that he did not say he was going to search, but on the contrary engaged Switzer in conversation in the hope of getting permission to search and that, after having told Switzer about the reports concerning the mill, Swit-

zer, without solicitation on Danforth's part, told the latter he could look around and see for himself. Thereupon the agents did make search as a result of which they found the whisky and still (which was not in operation) concealed in a blind cellar which extended under the garage and gristmill. The entrance to the cellar was found to be through a concealed trapdoor in the floor of the garage.

Before actually finding the still and the liquor the agents had no knowledge of its existence through sense of sight, smell or otherwise. The search was, therefore, purely an exploratory one without a warrant. The government contends that on the facts the court should find from Danforth's testimony that Switzer freely and voluntarily gave the agents an invitation or permission to search; and that the consent of the agent so given was legally binding on Ruffner, the employer, and constituted an effective waiver of the latter's constitutional rights. It is, however, admitted by the government that if Switzer's account of the substance of the conversation with Agent Danforth is to be accepted as the fact, then the search was illegal because the effect of the conversation indicated merely *acquiescence* as distinguished from *consent*. United States v. Slusser, 270 F. 818 (D. C., S. D. Ohio, 1921); United States v. Marra, 40 F.(2d) 271 (D. C. W. D. N. Y. 1930).

██ Under the view that I take of this case I do not find it necessary to make a sharp decision on the facts between the two versions of the circumstances as given by the respective witnesses. I am satisfied that the agents acted in good faith and with the belief on their part that Switzer was freely consenting to the search but I have some doubt as to whether Switzer really did consent to the search as freely as the agents seem to have understood. It is probable that the effect made on Switzer's mind by this prolonged conversation on the one topic was that opposition to the search which the agents obviously wished to make, even if they did not state that they intended to make it, would be useless on his part. In form, I am inclined to believe that what took place is substantially related by Agent Danforth but it is quite probable, it seems to me, that the substantial effect the conversation made on Switzer's mind was as testified to by him. Bearing in mind the important nature of the constitutional right and immunity given by the Fourth Amendment, it seems to me that a trier of the facts should be slow in finding an intentional and voluntary relinquishment of this right by an individual when the effect of the testimony is uncertain. But assuming that Switzer did freely consent to the search, in my opinion Ruffner was not bound thereby. The agents apparently knew that Ruffner was the owner and Switzer only an employee; and they also knew or could readily have learned, that the owner was near by. There was no such required haste in making the search as to preclude consulting the owner in person for permission. The government did not undertake to prove that Switzer had in fact authority from Ruffner to permit the search. And, in the absence of such proof, the circumstances did not justify the application of the doctrine of apparent authority seemingly relied upon by the government.

The federal decisions, or at least the weight of them, is in accord with this view. In Amos v. United States, 255 U. S. 313, 317, 41 S. Ct. 266, 65 L. Ed. 654, the Supreme Court found it unnecessary to consider whether it is possible for a wife, in the absence of her husband, to waive his constitutional rights under the Fourth Amendment, because the court found implied coercion on the part of the agents affecting the wife. But in Cofer v. United States, 37 F.(2d) 677, 679, the Circuit Court of Appeals for the Fifth Circuit, in a case quite similar on the facts, stated that the wife was without authority to bind her absent husband by waiving a legal warrant or consenting to an unauthorized search, citing the Amos Case, thus at least indicating that the implication from the Amos Case is against the apparent authority of the wife in such a situation. And a similar ruling was made by the District Court for the Southern District of Ohio in United States v. Rykowski, 267 F. 866, 871. The same principle under somewhat different circumstances is affirmed by In re Tri-State Coal & Coke Co., 253 F. 605 (D. C. W. D. Pa.).

The only case referred to by counsel where, in the absence of the owner, the consent of his agent on the premises has been held effective is Raine v. United States, 299 F. 407 (C. C. A. 9th Cir.). And this case is cited by the government as authority for the general proposition that a *present* agent may waive the rights of an *absent* owner. I think, however, the particular case does not support the principle thus broadly contended for. In the Raine Case the defendant prior to the search which was questioned, had been arrested for violation of the liquor law and was presumably in custody and away from the premises *indefinitely*. He had left an

agent in charge of the property. The agent gave the officer full permission to enter and search for evidence. In the opinion of the court by Circuit Judge Gilbert, page 411 of 299 F., the authority of the agent under the circumstances to consent for the owner was upheld without discussion; but it is also to be noted that Circuit Judge Rudkin, while concurring in the result, dissented on the particular point, and Circuit Judge Ross dissented on an underlying point in the case, the effect of which seemingly rendered unnecessary the discussion by him of the particular question.

The views herein expressed as to the effect of consent by an agent are intended to be limited to the facts of the particular case under consideration. The question involved is fundamentally only a question of agency. There may well arise situations in which the agent of an absent principal, by virtue of the nature of the premises and the use to which they are put and the extent of his powers, would be held to have legal authority to consent to a search without a warrant. It is not intended herein to announce a general principle of law to the effect that under no circumstances or conditions would a search be authorized unless consented to personally by the defendant owner.

I conclude that the search and seizure made in this case was not reasonable, and therefore was unlawful and in violation of the defendant's constitutional rights. Consequently, in my opinion, the motion to suppress the evidence must be granted and it is so ordered. The motion does not ask for a return of the whisky so seized which, it appears, was unlawfully possessed.