**Application of FRIED et al.**

District Court, S. D. New York.
Nov. 12, 1946.

Richard J. Burke, of New York City, for petitioners.

John F. X. McGohey, U. S. Atty., of New York City (John C. Hilly, Asst. U. S. Atty., of New York City, of counsel), for the Government.

RIFKIND, District Judge.

By petition Philip Fried and others prayed for an order directing the United States Attorney to return books, checks and papers belonging to the petitioner Fried and suppressing them as evidence and for an order suppressing the confessions made by the petitioners. The grounds assigned are that the books, checks and papers were

seized unlawfully and that the confessions were obtained by violating petitioner's rights to prompt arraignment and by other unlawful means. Upon the petition an order to show cause issued and the matter came on for hearing and argument.

The search and seizure complained of were contemporaneous with the arrest of the petitioner Nierenberg by special agents of the Federal Bureau of Investigation upon a warrant issued on a verified complaint.

I address myself first to the prayer for the suppression of the confessions. The United States Attorney asserts that the granting of such relief is beyond the power of the Court and that such application may not be entertained before indictment. Diligent search by counsel and additional investigation by the Court have failed to uncover any precedent for such an application. Apparently the question is one of first impression.

Exploration of the decisional territory adjacent to this problem reveals the following:

■ (1) Evidence secured by an unlawful search and seizure may be suppressed on application made before indictment. Perlman v. United States, 1918, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; Turner v. Camp, 5 Cir., 1941, 123 F.2d 840; Foley v. United States, 5 Cir., 1933, 64 F.2d 1, certiorari denied 289 U.S. 762, 53 S.Ct. 796, 77 L.Ed. 1505; United States v. Poller, 2 Cir., 1930, 43 F.2d 911, 74 A.L.R. 1382.

■ (2) The Federal Rules of Criminal Procedure prescribe that a motion for the return and suppression of anything obtained by an unlawful search and seizure should be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. The Court, by that Rule, retains discretion to entertain the motion at the trial or hearing. Rule 41(e).

■ (3) A respectable body of authority supports the view that an application to suppress a confession will not be entertained before trial. In all the cited cases the application was made after indictment. People v. Reed, 1928, 333 Ill. 397, 164 N.E. 847; Kokenes v. State, 1938, 213 Ind. 476,

13 N.E.2d 524; People v. Nentarz, 1931, 142 Misc. 477, 254 N.Y.S. 574; United States v. Lydecker, D.C.W.D.N.Y., 1921, 275 F. 976.

No decisions to the contrary have been located except Ah Fook Chang v. United States, 9 Cir., 1937, 91 F.2d 805, and United States v. Pollack, D.C.N.J.1946, 64 F.Supp. 554, where a motion to suppress a confession was entertained before trial. The point, however, was not raised.

In some of these decisions a distinction is expressly made between suppression of the fruits of unlawful seizures and the suppression of a coerced confession. Kokenes v. State, supra; United States v. Lydecker, supra.

(4) The argument advanced by the petitioners is substantially as follows: The fruits of unlawful seizures are suppressed in advance of indictment in order to (a) protect the petitioners' constitutional right under the Fourth Amendment and (b) to afford a sanction against misconduct by federal officials. The suppression of coerced confessions in advance of indictment would likewise protect the aggrieved person's rights under the Fifth Amendment and discourage official misconduct.

Support for this argument may be derived from the fact that confessions have been held inadmissible, not only because coercion has destroyed their trustworthiness, Wagner v. United States, 5 Cir., 1940, 110 F.2d 595, certiorari denied 310 U.S. 643, 60 S.Ct. 1104, 84 L.Ed. 1411, but also because they were procured through official misconduct, McNabb v. United States, 1943, 318 U.S. 332, 344, 63 S.Ct. 608, 87 L.Ed. 819.

Indeed in Nueslein v. District of Columbia, 1940, 73 App.D.C. 85, 115 F.2d 690, the Court held a confession inadmissible because obtained in the course of an unlawful entry effected in violation of the Fourth Amendment. The Court spoke of the confession as the thing "found" in the course of the unlawful "search," thus assimilating confessions unlawfully secured with property unlawfully seized.

In further support of the petitioners' position we have the language of Foley v. United States, supra:

"Though no indictment be pending, the court may reach forward to control the improper preparation of evidence which is to be used in a case coming before it, and can always by summary procedure restrain oppressive or unlawful conduct of its own officers." (Page 3 of 64 F.2d)

The facts of the case, however, related to a search and seizure, and not to a confession.

■ Despite these considerations, I have come to the conclusion that the petitioners' application is premature.

(1) It would introduce a strange anomaly in the law to permit the suppression of confessions before indictment and refuse suppression between indictment and trial. The trespass upon the constitutional privileges is no less grave in subjecting one to trial upon a coerced confession than in subjecting him to indictment. Nevertheless, as we have seen, the authorities generally adhere to the rule that objection must be made at the trial and not in advance thereof.

(2) Legal symmetry alone is, of course, not a very compelling consideration. There are, however, significant differences which distinguish the coerced confession from the product of unlawful search. In dealing with unlawful seizures we are not concerned with the probative force of the material sought to be suppressed as evidence. Probative force is assumed. The vindication of the right of privacy is alone in issue. In dealing with challenged confessions, their testimonial worth is generally in issue (except in cases like Nueslein v. District of Columbia, supra).

That distinction leads to this practical difference: A decision on an application to suppress as evidence materials obtained by an unlawful search and seizure is conclusive, that is, the evidence is excluded from the grand jury or the trial if the application is successful, and is admissible (unless excluded by other rules of evidence) if the application is unsuccessful. No such finality would attach to a pretrial or preindictment determination on a challenged confession. If the application to suppress were successful, it would, of course, be excluded. But if it were unsuccessful, the trial judge would still have to hear the challenge, at the trial, with the jury excluded, and if he determined that the confession was admissible, the issue of the voluntary character of the confession could still be submitted to the jury. (It would not do to make the decision of the judge hearing the preindictment or pretrial application, not to suppress, binding upon the trial judge.) To permit an application to suppress before indictment and before trial, would add two more possible hearings on the same facts to the two hearings already provided by existing practice.

In short, whereas the pretrial disposition of challenged seizures promotes the efficiency of trial administration by relieving the trial court of an extraneous issue to be tried while the jury is excluded, no such advantage is assured by the pretrial or preindictment disposition of challenged confessions.

It may be poor dialectics to argue against a proposition by extruding it to absurd lengths. It should nevertheless be noted that the same arguments which support the petitioners' position here would also support the contention that allegedly perjured statements in the possession of the United States Attorney may be suppressed before indictment. Indictment or trial on perjured evidence is an invasion of the right to due process. Such logic would lead to the absurd result that in a criminal case we would first try the "evidence" before we indicted or tried the accused.

Perhaps a distinction may be drawn between confessions challenged because they are alleged to be the products of coercion or duress and those challenged because they were obtained in the course of some other violation of the confessor's rights, such as unlawful search or delayed arraignment. The practice concerning the latter type could easily be assimilated to that applicable to unlawful search and seizure. However, I am not disposed to introduce such a classification. The benefits it would yield would be small. The practical difficulties outweigh it. While on paper the distinction seems real, actual experience shows few cases where both factors, coercion and other illegality, are not intimately entangled.

The petition to suppress the confessions is dismissed.

I address myself now to the petition to return and suppress certain books and papers.

The respondents justify the search and seizure on several grounds. They will be treated seriatim.

(1) The search was incidental to a lawful arrest effected pursuant to a warrant of arrest.

The warrant of arrest was issued by a commissioner upon a complaint which reads as follows:

"Southern District of New York, ss.:

"John F. Kehoe, Jr., being duly sworn, deposes and says that he is a Special Agent attached to the Federal Bureau of Investigation, Department of Justice, and *upon information and belief* alleges and charges as follows:

"That heretofore, to wit, on or about the 7th day of June, 1946, at the Southern District of New York and within the jurisdiction of this Court, Philip Fried, George Neary, Benjamin Fried, Fred Dinglefelder, Edward Terris, and John Birnbaum, the defendants herein, unlawfully, wilfully and knowingly did have in their possession certain goods and chattels knowing the same to have been stolen, said goods and chattels consisting of 256 bales of crude rubber, each bale weighing 110 lbs. apiece, a more exact description being to your deponent unknown, which had theretofore been stolen from a certain truck at the corner of Noble and West Streets, Brooklyn, N.Y., to wit, a truck of the St. George Trucking Co. of 109-115 Montgomery Street, Staten Island, New York City. Said goods and chattels were part of and constituted a foreign shipment of freight from The Reconstruction Finance Corporation, Philippine Islands, consigned to the Rubber Trading Association of New York.

"*The sources of deponent's information and the grounds of his belief are an investigation conducted by him in the course of his official duties.*

"Wherefore, deponent prays that a warrant may issue for the apprehension of the above named defendants and that they may be arrested, imprisoned or bailed, as the case may be."

■ Such a complaint will not support a warrant of arrest. United States v. McCunn, D.C.S.D.N.Y., 1930, 40 F.2d 295; United States ex rel. King v. Gokey, D.C. N.D.N.Y., 1929, 32 F.2d 793; Go-Bart Co. v. United States, 1930, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Pollack, D.C.N.J., 1946, 64 F.Supp. 554; United States v. Ruroede, D.C.S.D.N.Y., 220 F. 210.

■ (2) The search was incidental to a lawful arrest made on probable cause that a felony was committed. Since the arrest was made by Special Agents of the Federal Bureau of Investigation, it would be valid only if the arresting officer had reasonable grounds to believe that there was likelihood of the person escaping. 5 U.S.C.A. § 300a; United States v. Haberkorn, 2 Cir., 1945, 149 F.2d 720.

■ No evidence of such belief or of such likelihood was presented upon the hearing. Nor is there any force in the argument that a private person could have made the arrest without a warrant, New York Code of Criminal Procedure Sections 183 and 184, because a private person could in no event make a search incidental to an arrest.

(3) The search and seizure were justified by the consent of the petitioner Neary.

■■ Normally a consent to search by government agents after an arrest is not to be lightly inferred. "Bearing in mind the important nature of the constitutional right and immunity given by the Fourth Amendment, it seems to me that a trier of the facts should be slow in finding an intentional and voluntary relinquishment of this right by an individual when the effect of the testimony is uncertain." United States v. Ruffner, D.C.Md., 1931, 51 F.2d 579. Non-resistance is not equal to consent. United States v. Hoffenberg, D.C. E.D.N.Y., 1938, 24 F.Supp. 989.

Upon the hearing petitioner Nierenberg testified in support of the application. He also called Miss Berke, a bookkeeper, and as a rebuttal witness, Seymour Cohen, an employee of Special Formula Chemical

Company. The government called six of the 15 agents who participated in the arrest and search. The arrest and search occurred on September 17, 1946 at the offices and plant of Special Formula Company, which is the trade name under which Philip Fried conducted a rubber cement business. The agents arrived at about 4:30 p. m., and immediately placed Nierenberg under arrest on the charge of knowingly possessing goods stolen in foreign commerce. Other arrests were also made, employees were interviewed and the search was conducted. The entire operation lasted approximately three hours.

The search was made in two parts: An inspection of the plant, which yielded two bales of rubber believed at the time to be part of the stolen merchandise, but since then returned as innocent goods; an examination of the business records of Special Formula Chemical Company and the seizure of some of them. The government contends that the first search proceeded on an oral consent and the latter on both an oral and written consent. The written consent is upon a prepared form which reads as follows:

"I, George Neary, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize Fleming L. Liggitt and Eldred Wesley Cox, Special Agents of the Federal Bureau of Investigation, United States Department of Justice, to conduct a complete search of the building located at 400 West 219th St., New York City, N. Y. These agents are authorized by me to take from my residence any letters, papers, materials or other property which they may desire.

"This written permission is being given by me to the above named Special Agents voluntarily and without threats or promises of any kind.

"(Signed)  George Neary.

"Witnesses:

"Fleming L. Liggitt, F.B.I., N.Y.C.

"Eldred W. Cox, F.B.I., N.Y.C., 9/17/46."

It was signed by Nierenberg and witnessed by two agents of the FBI.

It is unnecessary to rehearse the testimony. It presents the usual conflict in controversies of this character. The substance of Nierenberg's testimony is that he merely submitted to authority, that he feared the consequences of refusal, and that he was not apprized of his right to refuse.

■■■ Were I deciding this application on the affidavits initially submitted in this matter, I would be inclined to resolve this issue of fact in favor of the petitioner. The oral hearing has persuaded me to resolve it against him. My reasons are as follows:

(1) Nierenberg is the general manager of Special Formula Chemical Company. His earnings in 1945 from that enterprise were $20,000. He is also a co-owner of another business enterprise. I mention these facts to indicate that he is not a poor, illiterate, uninformed person, but a citizen of substance and means. He gave every impression of self-confidence, alertness, competency. He is quite the opposite of the cartoonist's representation of The Timid Soul. He is a man of affairs, accustomed to deal with persons in authority and not at all overawed by the badge of office. He conducted himself militantly and skilfully during his cross-examination.

(2) He testified falsely on some matters, and, in at least one instance, I am convinced that he did so wilfully—in the matter of his foreknowledge of official inspection of the plant in June, 1946. His previous conviction for forgery does not aid his credibility.

(3) In June, 1946, Special Formula Chemical Company had been searched by FBI agents, with the consent of Fried, and nothing of an incriminating nature had been discovered.

(4) Nierenberg felt entirely secure in consenting to a search, as there was in fact no stolen rubber on the premises, and the books revealed no acquisition of such rubber as had been stolen. He undoubtedly believed that the exhibition of an attitude of cooperation and of willingness to prove that "We have nothing to hide" would lead to the same satisfactory result as the June investigation. It is significant that

the petitioners did not call Fried to contradict the testimony of Agent Cox, that during the June inspection Fried had said "that the plant was open for inspection at any time; that they had nothing there that they desired to conceal * * * That any time we desired to look through his plant we should feel free to come and he would be happy to see that we went through the plant."

(5) My conclusion is that neither fear nor submissiveness induced the undenied consent, but that experience and a motive to give the appearance of innocence, in the security in which he believed himself to be, combined to induce Nierenberg to give actual and voluntary consent to the search.

(6) I am convinced that Nierenberg had authority to give consent. He was not only general manager, but testified that he was entitled to 50 per cent of the profits. Except for such matters as check signing, his authority was coextensive with Fried's. Seymour Cohen, an employee, called by the petitioners, referred to Fried and Nierenberg as "the two bosses."

The incident in the course of search during which Nierenberg authorized an employee to take away from the plant a collection of tools further indicates that Nierenberg had authority to authorize the seizure of such material as the Federal agents discovered.

The application to return the seized books and papers and suppress them as evidence is denied.