## JENKINS v. UNITED STATES.
### No. 3406.

Circuit Court of Appeals, Tenth Circuit.
May 3, 1947.

C. Arthur Anderson, of St. Louis, Mo., and Chas. W. Moss, of Oklahoma City, Okl., for appellant.

Robert E. Shelton, Asst. U. S. Atty., of Oklahoma City, Okl., for the United States.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Jenkins and one Lane were charged, by an information containing two counts, with violations of 27 U.S.C.A. § 223. The first count charged that Jenkins and Lane transported intoxicating liquor into Oklahoma, a state in which all sales of intoxicating liquor containing more than four per centum of alcohol by volume are prohibited. The second count charged that they assisted in the transportation of intoxicating liquor into Oklahoma. Lane was convicted on the first count and Jenkins on the second count.

At the trial, evidence of a large quantity of whiskey and other intoxicating liquor being transported by an International trailer truck within Oklahoma, obtained through the search of the truck made without a search warrant, was introduced in evidence. A motion to suppress the evidence thus obtained was denied by the trial court.

The evidence introduced at the hearing on the motion to suppress established these facts: On March 27, 1945, two investigators for the Alcohol Tax Unit pointed Jenkins out to one Mogridge, another investigator for the Alcohol Tax Unit, and told the latter that Jenkins was engaged in transporting whiskey into Oklahoma in a large truck equipped with a cattle rack. On December 10, 1945, Mogridge received information from Hoyt Shelby, the Indian Agent at Anadarko, Oklahoma, that a big truck was transporting intoxicating liquor into Oklahoma. On December 15, 1945, Mogridge received a telephone call from an anonymous person who stated: "* * * There is a big truck coming into Anadarko and Binger. * * * It will have three to four hundred cases of whiskey on it. * * * It is a big, closed semi-trailer job painted red. I don't know positive but I think it is an International. It will be in over the weekend. It will stop at Frank Newell's; then on to Binger. * * *" On December 19, 1945, Mogridge received a second call from an anonymous person who stated: "In regard to that truck. * * * It will be in between 10 o'clock Thursday and sometime Friday morning, coming out of St. Louis. * * * There will be two or three men. I think they will unload at Frank Newell's, at his garage in Anadarko." It was not unusual for one Oklahoma liquor dealer to give information respecting importations by other liquor dealers to investigators for the Alcohol Tax Unit. On December 21, 1945, Mogridge, Dale, and Pauly, the latter two also being investigators for the Alcohol Tax Unit, saw the truck at Anadarko, Oklahoma. It was parked at the premises of Frank Newell, a known illicit liquor dealer at Anadarko. Newell boarded the truck. The truck then proceeded on, and the investigators followed it for about 30 miles to Binger. At Binger, the truck parked in a driveway in front of the home of one John Tierney, another known illicit liquor dealer. Tierney came out of his house. The investigators parked their car behind the truck, approached the truck and identified themselves. Pauly took a position beside Lane and Newell, who were by the hood of the truck. Jenkins was in the driver's seat. Newell said, "You fellows got here at a

funny time." In response to inquiries by Mogridge, Jenkins gave Lane's name, and Jenkins and Lane stated that they resided at Joplin and Springfield, Missouri, respectively. Mogridge then told Jenkins to get out of the truck, searched him for weapons, and Mogridge and Jenkins walked to the back of the truck. Jenkins said, "Now look here. Isn't there something we can do to fix that?" Mogridge replied in the negative and asked Jenkins how much whiskey was in the truck. Jenkins replied, "I think there is about 330 cases." After a short conversation, Mogridge placed Jenkins under arrest, searched him, and seized an invoice for 334 cases of taxpaid liquor. Mogridge then arrested and searched Lane. Jenkins drove the truck to Oklahoma City. The investigators there broke the lock and seized 334 cases of whiskey and other intoxicating liquor.

The truck was a 1940 International and equipped with a large trailer. It belonged to Lane. On December 15, 1945, Lane had the truck painted, changing the color from white to red. Jenkins formerly owned a truck equipped with a cattle rack.

■ The search and seizure were lawful if facts within the knowledge of Mogridge and of which he had reasonably trustworthy information were sufficient in the circumstances to lead a reasonably discreet and prudent man to believe that intoxicating liquor was being transported in the truck into Oklahoma.[1]

■ It is urged that the admission made by Jenkins with respect to the amount of whiskey in the truck was obtained through the duress of arrest. It is doubtful that the action of Mogridge in searching Jenkins for weapons amounted to an arrest. To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained.[2]

■ It is our opinion, however, that the facts and circumstances known to Mogridge, and of which he had reasonably trustworthy information, coupled with the voluntary incriminating inquiry made by Jenkins to Mogridge, wholly apart from the admission referred to above, were sufficient to lead a reasonably discreet and prudent man to believe that intoxicating liquor was being transported in the truck into Oklahoma.

We, therefore, conclude that the search and seizure were lawful.

It was stipulated at the trial that the truck used to transport the liquor belonged to Lane and that the liquor belonged to Jenkins. The evidence established these facts: Lane was in St. Louis on December 19, 1945, and was driving the truck at that time. Two of the cases of whiskey on the truck bearing serial numbers were in St. Louis on December 18, 1945, in the hands of a St. Louis wholesale liquor dealer. The records of the wholesale dealer showed that the liquor was sold on that day to W. P. Davis of Waynesville, Missouri. All of the liquor seized bore Missouri state liquor stamps. Lane drove the truck from Kansas into Oklahoma at about 8 p. m. on December 20, 1945. He entered under a clearance certificate issued by the State of Kansas, based on a false manifest, and he carried false bills of lading. Lane purchased gasoline at Perry, Oklahoma, between midnight and 3 a. m. on December 21, 1945. The truck was first seen by the investigators for the Alcohol Tax Unit at 10:30 a. m., December 21, 1945, in the yard of the premises belonging to Frank Newell at Anadarko, Oklahoma. They followed the truck to John Tierney's house at Binger, Oklahoma. The truck stopped at Tierney's house at Binger and the motor was being repaired by Lane when the investigators approached. Jenkins was in the driver's seat.

■ From this evidence, the jury was

---

[1] Husty v. United States, 282 U.S. 694, 701, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L. R. 1407; Carroll v. United States, 267 U. S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Jones v. United States, 10 Cir., 131 F.2d 539, 540; Bruner v. United States, 10 Cir., 150 F.2d 865, 866.

Cf. Leong Chong Wing v. United States, 9 Cir., 95 F.2d 903; Nelson v. United States, 8 Cir., 18 F.2d 522.

[2] State ex rel. Sadler v. District Court, 70 Mont. 378, 225 P. 1000, 1001, 1002; 6 C.J.S., Arrest, § 1b, p. 571; 4 Am.Jur. p. 5, § 2.

warranted in finding that Lane imported the intoxicating liquor into Oklahoma and that Jenkins assisted him in such importation.

Affirmed.