## BRINEGAR v. UNITED STATES.
### No. 3518.

Circuit Court of Appeals, Tenth Circuit.
Dec. 10, 1947.

Rehearing Denied Jan. 2, 1948.

Writ of Certiorari Granted March 8, 1948.
See 68 S.Ct. 662.

Irvine E. Ungerman, of Tulsa, Okl. (Paul O. Simms, of Vinita, Okl., and Charles A. Whitebook, of Tulsa, Okl., on the briefs), for appellant.

Kenneth G. Hughes, Asst. U. S. Atty., of Sapulpa, Okl. (Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal by Brinegar from a judgement of conviction for a violation of the Liquor Enforcement Act of 1936, § 3, 27 U. S. C. A. § 223.

The sole ground[1] for reversal urged is the denial of a motion to suppress evidence obtained by a search and seizure. At the hearing on the motion, Brinegar testified that on March 3, 1947, while driving a 1946 Ford coupe, he was apprehended by two investigators of the Alcohol Tax Unit about three miles east of Quapaw, Oklahoma; that the investigators searched the coupe and found a number of cases of whisky therein; that they seized the coupe and the whisky; that no search warrant was served upon him, and that he did not consent to the search; that one case of whisky was in the front seat, but was covered with a lap robe; that the remainder of the whisky was back of the front seat but could be exposed to view by raising the seat.

The following facts were established by the testimony of Malsed and Creehan, investigators for the Alcohol Tax Unit, at the hearing on the motion to suppress: On March 3, 1947, the investigators were working on the north boundary line of Oklahoma. Malsed knew Brinegar. He had arrested him on September 30, 1946, "for hauling liquor." On other occasions, he had seen him loading intoxicating liquor into an automobile at Joplin, Missouri, and for

HUXMAN, Circuit Judge, dissenting.

[1] In their brief, counsel have contended that the conviction could not stand because of the repeal of 37 O. S. A. §§ 41–48, but that ground was abandoned at the oral argument.

some time he had known him as a "liquor hauler." The investigators were in an automobile parked on the side of the road about one-fourth of a mile east of the Quapaw bridge. The road there runs east and west. The investigators observed a Ford coupe approaching from the east. Malsed recognized Brinegar as the driver of the coupe as it passed the point where the investigators were stationed. The coupe appeared to be heavily loaded. Upon passing the investigators, Brinegar increased his speed and the investigators started in pursuit of him. After it had crossed the bridge, the coupe began skidding on a curve and Brinegar slowed down. Up to the time the coupe skidded, the investigators, although traveling at the maximum speed of their automobile, were unable to gain on Brinegar. When Brinegar slowed down, the investigators drove up alongside the coupe and Creehan sounded the siren. Brinegar then stopped on the side of the road. The investigators alighted from their automobile and Malsed asked Brinegar, "How much liquor have you got in the car this time?" Brinegar replied, "Oh, not so much." In response to further questioning, Brinegar stated there were about 12 cases of whisky in the coupe. Brinegar further stated that he had both a wholesale and a retail liquor dealer's stamp and asked if that would help him. The investigators then searched the car and found 13 cases of whisky. One case of Schenley's was on the floor to the right of the driver's seat in full view of the investigators; the remainder of the whisky, except a partially consumed bottle on the seat, was back of the seat. The search in its entirety took place after the incriminating statements had been made by Brinegar. The investigators testified that such statements were made by Brinegar before they placed him under arrest.

The testimony of the investigators with respect to the statements made by Brinegar was not objected to on the ground that they were not voluntary nor on any other ground; neither did Brinegar testify or otherwise assert at the hearing on the mo-

tion to suppress that such statements were not voluntary. At the conclusion of the testimony, the trial court made an oral finding that such statements were voluntary and that finding was not challenged below. The motion to suppress was denied.

■ Whether there was a technical arrest before the statements were made by Brinegar may be doubted. In Jenkins v. United States, 10 Cir., 161 F.2d 99, 101, the court said:

"To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained."

But we deem it unnecessary to decide whether there had been a technical arrest at the time the statements were made. At least, the investigators had pursued Brinegar, sounded their siren, and had caused him to stop, and they were questioning him as a suspect when the statements were made.

■ We are of the opinion that the facts within the knowledge of the investigators and of which they had reasonable trustworthy information prior to the time the incriminating statements were made by Brinegar were not sufficient to lead a reasonably discreet and prudent man to believe that intoxicating liquor was being transported in the coupe, and did not constitute probable cause for a search.[2] Neither were such facts sufficient, in our opinion, to induce an ordinarily prudent and cautious person, under the circumstances, to believe in good faith that Brinegar had committed a felony so as to constitute probable cause for the investigators arresting Brinegar without a warrant.[3] However, the statements made by Brinegar, together with the facts theretofore known by the investigators, if the investigators were warranted in acting upon such statements, were sufficient to lead a reasonably discreet and prudent man to believe that intoxicating liquor was being transported by Brinegar into Oklahoma and, since it was not practicable for the investigators to obtain a search war-

---

[2] Von Patzoll v. United States, 10 Cir., 163 F.2d 216, 220, and cases there cited.

[3] Papani v. United States, 9 Cir., 84 F.2d 160, 163; Wisniewski v. United States, 6 Cir., 47 F.2d 825; Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035; United States v. One 1941 Oldsmobile Sedan, 10 Cir., 158 F.2d 818, 819.

rant, justified the search and seizure of the whisky and the arrest of Brinegar.

The question presented then is whether the investigators, having sufficient information to suspect Brinegar, but not sufficient information to constitute probable cause for a search of the coupe and the arrest of Brinegar, could, after stopping him and interrogating him with respect to whisky in the coupe, lawfully act upon the information obtained as a basis for probable cause for the search and seizure.

If the statements made by Brinegar to the investigators could have been properly introduced in evidence against Brinegar at a trial on the criminal charge, then we think they, with the other facts known to the investigators, constituted adequate basis for probable cause for search and seizure by the investigators.

■ A confession or an incriminating statement made by a person is not involuntary merely because made while such person is in custody after arrest.[4]

■ "The mere questioning of a suspect while in the custody of police officers is not prohibited either as a matter of common law or due process." [5] Neither will the fact that the arrest, under which the person was taken into custody, was illegal, in and of itself render a confession or an incriminating statement involuntary.[6] The test is whether, under all the facts and circumstances, the confession or incriminating statement was voluntarily made.[7]

We do not regard McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, to hold otherwise. In United States v.

Mitchell, 322 U.S. 65, 67, 64 S.Ct. 896, 897, 88 L.Ed. 1140, the court said:

"In the circumstances of the McNabb case we found such an appropriate situation, in that the defendants were illegally detained under aggravating circumstances: one of them was subjected to unremitting questioning by half a dozen police officers for five or six hours and the other two for two days. We held that 'a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves accomplices in wilful disobedience of law. * * *' Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the McNabb case which led us to rule that a conviction on such evidence could not stand."

■ Concluding, as we feel we are compelled to do, because of the findings of the trial court and the facts disclosed by this record that the statements made by Brinegar were not coerced by the action of the officers, but were voluntarily made, we hold that such statements would have been admissible against Brinegar on a trial on the criminal charge and that such statements, together with other facts known to the investigators, constituted probable cause for a search of the coupe and, since it was impracticable for the officers to obtain a search warrant, that the search was lawful.[8]

Affirmed.

[4] Pierce v. United States, 160 U.S. 355, 357, 16 S.Ct. 321, 40 L.Ed. 454; Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131; Lyons v. Oklahoma, 322 U.S. 596, 601, 64 S.Ct. 1208, 88 L.Ed. 1481; Lisenba v. California, 314 U.S. 219, 240, 62 S.Ct. 280, 86 L.Ed. 166.

Cf. United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.

[5] Lyons v. Oklahoma, 322 U.S. 596, 601, 64 S.Ct. 1208, 1212, 88 L.Ed. 1481.

[6] Gilmore v. State, 3 Okl.Cr. 434, 106 P. 801, 803, 27 L.R.A.,N.S., 151; People v. Klyczek, 307 Ill. 150, 138 N.E. 275, 277; People v. Vinci, 295 Ill. 419, 129 N.E. 193, 195; Hicks v. State, 213 Ind. 277, 11 N.E.2d 171, 177; Quan v. State,

185 Miss. 513, 188 So. 568, 569; State v. Hoskins, 327 Mo. 313, 36 S.W.2d 909, 910; Balbo v. People, 80 N.Y. 484, 499; People v. McFarland, 386 Ill. 122, 53 N.E.2d 884, 887.

See, also, State v. Zukauskas, 132 Conn. 450, 45 A.2d 289, 293; Sykes v. United States, App.D.C., 143 F.2d 140.

Cf. R. v. Thornton, 1 Moody, C.C. 27.

[7] Young v. United States, 5 Cir., 107 F.2d 490, 492; Ruhl v. United States, 10 Cir., 148 F.2d 173, 176; Bram v. United States, 168 U.S. 532, 542, 18 S.Ct. 183, 42 L.Ed. 568.

[8] See Morgan v. United States, 10 Cir., 159 F.2d 85.

516

HUXMAN, Circuit Judge (dissenting).

I think the fair interpretation of the evidence is that Brinegar's reply to the officer's inquiry as to how much liquor he had was "Not too much." Brinegar testified that his reply was "Not too much," while Malsed, the officer who asked the question, testified that Brinegar replied, "Not so much," or words to that effect. But I attach no particular significance to the exact words of his reply. In my opinion, the decision in this case does not turn upon whether the statement by Brinegar, after he was stopped and interrogated by the Alcohol Tax Unit agents, was voluntary or involuntary, or whether it was of such an unequivocal nature as to constitute probable cause for believing that he had liquor which he was transporting in violation of the Federal Law. By the admission of the agents themselves, they did not pursue this car for the purpose of arresting Brinegar. Their testimony makes that very clear. They had no warrant for his arrest. They did not see him commit an act of law violation which would have warranted them in arresting him without a warrant, and they testified that they did not arrest him for fully fifteen minutes after they had stopped him, interrogated him, and found the whisky. What for then did they pursue him down the road with their siren screeching and crowd him off the highway, place him under restraint, and make it impossible for him to proceed. There can only be one answer—to ascertain whether he had whisky. Ascertaining this constituted a search. Is there any one so naive as to believe that if he had answered that he had no whisky that they could have apologized, begged his pardon for having violated his constitutional rights as well as their oath of office to respect the Constitution, and permitted him to proceed. That they would have searched his car in any event is borne out by the position the Government takes in this appeal, that the condition of the car at the time they first observed it, plus the fact that Brinegar had the reputation with the Alcohol Tax Unit agents of dealing in liquor, constituted probable cause warranting a search without a warrant. In other words, they intended to search this car, and the search was on when the chase began and Brinegar was crowded off the road and prevented from going his lawful way as far as the Alcohol Tax Unit agents were concerned.

In Nueslein v. District of Columbia, App. D.C., 115 F.2d 690, a taxicab had struck a parked car. The officers found the taxi parked about a block and a half from the scene of the accident; they also found the identifying license of the driver. They either opened the door of the house where the car was parked or entered the open door and called out the name of the driver of the cab. He answered from upstairs and stated that he would come down. When he came down, the officers interrogated him and he admitted that he had driven the car and had a drink of beer prior thereto. The court held that the officers were engaged in a search of the premises.

In United States v. Hanley, D.C., 50 F.2d 465, the agents stopped a truck, ordered the driver to pull over to the curb, then boarded the truck to interrogate him and obtained an admission that he had a load of beer. The court held that this constituted a search. The facts in this case are indistinguishable in principle from those in these two cases. In the Hanley case, the truck was stopped and boarded for the purpose of interrogating the driver. Here it was stopped, forced to the roadside and surrounded for the purpose of interrogating the driver. As the court said in the Nueslein case when the officers entered the house [115 F.2d 693], "They were just investigating. They were still illegally investigating when the defendant told them that he was driving the cab at the time of the accident." So here the officers were illegally investigating when they pursued the car, forced it to the side of the road, compelled it to stop, and interrogated the driver. If the acts of the officers in the Nueslein case constituted a search, the acts of the officers in this case likewise constituted a search.

There is a line of cases distinguishable upon the facts from the above cases. In Poulas v. United States, 9 Cir., 95 F.2d 412, the defendant was sitting in his parked

car when officers came up and questioned him, and he admitted that he had whisky. In Jenkins v. United States, 10 Cir., 161 F.2d 99, the officers followed a truck until it stopped, then drew up behind it, got out and questioned the occupant, and obtained an admission from him. In none of the cases did the officers pursue the defendant under the belief that they had probable cause for searching the automobile without a warrant or under circumstances justifying the conclusion that they were pursuing or stopping the defendant for the purpose of searching his car.

The facts in the Morgan case are not nearly as strong on the question of pursuit as they are in this case. But in any event, this precise point was not raised or decided in that case. The only question discussed and the only thing said was that the admission was voluntary and constituted probable cause for the search. Whether the result of the search could be used as evidence because obtained in violation of the Fourth Amendment was not alluded to nor decided in that case. The Morgan case is no authority for the proposition that a voluntary admission, obtained while officers were engaged in a search in violation of the Fourth Amendment, is admissible.

As pointed out by the present Chief Justice of the Supreme Court, who wrote the opinion in the Nueslein case, there is a conflict between the Federal Rule and the common law rule, as well as the rule of a number of State courts as to the admissibility of voluntary statements obtained while officers were engaged in conducting a search in violation of the Fourth Amendment. Under the Federal Rule, such statements are inadmissible.[1] The admission upon which the Government relies was obtained while agents were engaged in an illegal search of Brinegar's car. The right of a citizen to be secure from unreasonable searches is not limited to homes. It applies as well and with equal force to "their persons, * * * papers and effects."

I subscribe fully to the philosophy of the Nueslein case. The personal guarantees of the Constitution are sacred rights. They are the things for which men have died throughout the centuries. Without them in the Constitution, it could not have been adopted and our present system of Government could not have been formed. Whenever a violation of one of these rights is involved, all reasonable presumptions should be resolved against one charged with a violation thereof and the burden should be placed upon him to bring his conduct clearly within the Constitutional power.[2]

Of course, officers should not be unduly restricted in their efforts to enforce the law, but in no instance are they warranted in violating constitutional immunities in their efforts to enforce the law. Having taken an oath to uphold the law, they should respect the rights of citizens guaranteed thereunder and should not, in their zeal, violate such rights. There is no conduct more unwarranted or offensive than to have an officer, who has taken an oath to uphold the law, pursue a citizen down the road, force him to the ditch, and interrogate him, all without probable cause, in the hope that he may obtain an admission ordinarily admissible under the Fifth Amendment, while engaged in violation of the Fourth Amendment.

I would, accordingly, reverse and remand with direction to sustain the motion to suppress.

---

[1] In addition to the Nueslein case, see also United States v. Setaro, D.C., 37 F.2d 134; In re Oryell, D.C., 28 F.2d 639; In re Fried, 2 Cir., 161 F.2d 453.

[2] Nueslein v. District of Columbia, App. D.C., 115 F.2d 690; Gibson v. United States, App.D.C., 149 F.2d 381; United States v. Ruffner, D.C., 51 F.2d 579; In re Fried, D.C., 68 F.Supp. 961; Go-Bart Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374.